Eugene G. CHIN

v.

The UNITED STATES.

No. 110–88C.

United States Claims Court.

Feb. 7, 1989.

Lee Robert Arzt, Richmond, Va., atty. of record, for plaintiff.

E. Richard Southern, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant. R. Andrew German and Diana E. Johnson, U.S. Postal Service, of counsel.

## OPINION

MEROW, Judge:

By an unpublished order filed September 7, 1988, defendant's motion(s) to dismiss or, in the alternative, for summary judgment was denied. Defendant thereafter filed a motion for reconsideration. Pursuant to RUSCC 83.2(f), plaintiff was allowed time to respond to defendant's motion for reconsideration. Plaintiff's response was filed with the court on December 29, 1988; and, defendant filed a reply on January 25, 1989. For the following reasons, defendant's motion for reconsideration of the September 7, 1988 order is granted.

### Facts

Plaintiff, an employee of the United States Postal Service (USPS), was a member of a bargaining unit represented by the American Postal Workers Union (APWU). The USPS and APWU were parties to a National Agreement (collective bargaining agreement or labor contract), effective from July 21, 1984 through July 20, 1987.

Article 20, section 2, of the agreement provided:

Recognizing the need for adequate security for employees in parking areas, and while en route to and from parking areas, the Employer will take reasonable steps, based on the specific needs of the individual location, to safeguard employee security, including, but not limited to, establishing liaison with local police authorities, requesting the assignment of additional uniformed police in the area, improving lighting and fencing, and where available, utilizing mobile security force patrols.

On June 30, 1985, at about 7:30 a.m., plaintiff was leaving work at the end of the night shift when he saw another postal employee being assaulted. The other employee and her assailant were standing on a USPS parking lot. Plaintiff, who was walking to his car which was parked on a public street, was not on USPS property when he became aware of and tried to stop the incident. Plaintiff got as far as the street alongside the USPS parking lot when he was shot and wounded by the assailant, who also shot and killed the other postal employee. The assailant was later convicted of the murder of the other postal employee.

On July 31, 1985, plaintiff filed notice of injury and claim for benefits under the Federal Employees' Compensation Act (FECA) because of this incident. The FECA provides for the payment of Continuation of Pay (COP), not to exceed 45 days, to an employee "who has filed a claim for a period of wage loss due to a traumatic injury * * *." 5 U.S.C. § 8118. On September 6, 1985, the district office of the Office of Workers' Compensation Programs (OWCP), Department of Labor, determined that Mr. Chin was not entitled to COP during his absence from work from June 30, 1985 to that date because he had not filed his claim for COP within 30 days of his injury, as required. Mr. Chin requested a hearing. The district office decision was affirmed. Subsequently, the director, OWCP, in Washington, D.C., on July 31, 1986, rejected Mr. Chin's claim for compensation benefits because "[t]he claimant was not in the performance of duty when the injury occurred." After a hearing held on February 26, 1987, this decision was affirmed because Mr. Chin's injury occurred after his regularly assigned tour of duty, occurred off USPS premises, and did not arise out of the performance of his job duties. Thus, plaintiff's injury was not "in the course of employment" nor did it "arise out of the employment." Plaintiff's argument that the USPS was negligent in not providing adequate security regarding the USPS employees' parking areas was rejected as negligence is immaterial under the FECA. The OWCP decision was reviewed and finalized on May 1, 1987.

Plaintiff also filed a grievance pursuant to the labor contract grievance procedures, alleging, *inter alia*, a violation of Article 20 of the National Agreement. On June 10, 1987, plaintiff's grievance was settled without going to arbitration. Mr. Chin had requested compensation for all missed time and for medical expenses incurred, and that a full-time security station be manned in all employee parking lots. The agreement between the APWU representative and the USPS management representative acknowledged that the OWCP, which had denied plaintiff's claim, had the authority to make a final decision regarding a claim for COP. The settlement agreement also acknowledged that "[t]he situation should have been handled in a more professional manner than in the instant case." Plaintiff claims he had no knowledge of this settlement agreement until defendant filed its motion(s) on May 16, 1988. Plaintiff filed the complaint in this court on February 22, 1988, requesting $1,500,000 for breach of contract damages.

### Discussion

In its motion to dismiss/motion for summary judgment, defendant argues that general contract principles are inapplicable since a labor contract is involved herein and that this court lacks jurisdiction to decide a claim for breach of a collective bargaining agreement; pursuant to federal labor laws, plaintiff has failed to allege an essential element of his breach of contract claim, *i.e.,*

that the union breached its duty of fair representation; and, plaintiff has no right to Claims Court review of his FECA claim.[1] In addition, defendant argues that plaintiff's breach of contract claim was not filed within the six-month limitations period applicable under federal labor law to breach of labor contract/unfair representation suits and, thus, is time-barred. *See Del-Costello v. Int'l Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed. 2d 476 (1983).

■ In his complaint and opposition to defendant's motions, plaintiff claims that the USPS breached the national labor contract with APWU by not providing adequate security regarding the USPS employee parking areas. According to plaintiff, he is an intended beneficiary of the agreement to provide security in parking areas to USPS employees and he was injured as a direct result of the asserted breach of the security provisions of the contract. Therefore, as a third-party beneficiary of the contract between APWU and USPS, plaintiff is suing the USPS for breach of that contract.[2]

Subsequent to defendant's filing its motion for reconsideration, plaintiff was given the opportunity to respond to defendant's argument that plaintiff has failed to plead a justiciable breach of contract claim under federal labor law, since plaintiff did not assert the union breached its duty of fair representation regarding the processing of Mr. Chin's grievance. In plaintiff's opposition to defendant's motions, filed July 11, 1988, Mr. Chin states he is suing under a contract theory only, and he emphasized that he is not suing his union for breach of the duty of fair representation. In addition, in plaintiff's response of December 29, 1988, he states that to go forward with a fairness of representation allegation against the APWU, if the court permits him another opportunity to make such an allegation, would in all probability be a totally futile exercise.

■ With respect to an employee's suit against his/her employer for breach of a labor contract, the Court in *DelCostello v. Int'l Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), stated at 163–65, 103 S.Ct. at 2290–91:

It has long been established that an individual employee may bring suit against his employer for breach of a collective-bargaining agreement. *Smith v. Evening News Assn.,* 371 U.S. 195 [83 S.Ct. 267, 9 L.Ed.2d 246] (1962). Ordinarily, however, an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective-bargaining agreement. * * * Subject to very limited judicial review, he will be bound by the result according to the finality provisions of the agreement.

1. As mentioned in n. 15 of the September 7, 1988 order, plaintiff states he is not requesting review of the FECA decision.

2. An intended third-party beneficiary of a government contract may maintain an action against the United States under 28 U.S.C. § 1491. *See Hebah v. United States,* 192 Ct.Cl. 785, 792, 428 F.2d 1334, 1339 (1970). Although defendant does not specifically argue that the national agreement between the USPS and the APWU is not a government contract within the meaning of 28 U.S.C. § 1491, it does claim that the Claims Court lacks jurisdiction because suits against the USPS alleging breach of collective bargaining agreements are governed by the Postal Reorganization Act, 39 U.S.C. § 1208(b), which creates jurisdiction in the district courts. However, it has been determined that the federal district courts do not have exclusive jurisdiction over suits for violation of contracts between the USPS and labor organizations, such that the Claims Court would lack 28 U.S.C. § 1491 contract jurisdiction over such matters

pursuant to 39 U.S.C. § 1208(b). *See Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962). The Court considered § 301 of the Labor–Management Relations Act (LMRA) in *Charles Dowd Box Co.* whereas, in this case, 39 U.S.C. § 1208(b) is in issue. In *McPherson v. United States,* 2 Cl.Ct. 670 (1983), n. 3, the court stated "[i]t is well established that § 1208(b) 'is the analogue of § 301(a) of the Labor–Management Relations Act of 1947' [29 U.S.C. § 185(a) ] and that the body of law developed under § 301 is controlling in § 1208(b) actions." (Citations omitted.) Therefore, the Court's analysis and holding in *Charles Dowd Box Co.* regarding § 301(a) are equally applicable to disputes involving collective bargaining agreements governed by 39 U.S. C. § 1208(b). As District Court jurisdiction is not exclusive, 28 U.S.C. § 1491 and the contract involved provide the basis for Claims Court jurisdiction.

* * * [H]owever, we recognized that this rule works an unacceptable injustice when the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation. In such an instance, an employee *may* bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding. * * * Such a suit, as a formal matter, comprises two causes of action. The suit against the employer rests on § 301, since the employee is alleging a breach of the collective-bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation * * *. "Yet the two claims are inextricably interdependent. 'To prevail against either the company or the Union, * * * [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union.'" * * * *The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.* The suit is thus not a straightforward breach-of-contract suit under § 301 * * * but a hybrid § 301/fair representation claim, * * *.

(Emphasis added; citations omitted; footnote omitted.)

Based on *DelCostello,* an employee (the plaintiff) may chose to sue only the employer for breach of contract. However, in the circumstances presented herein, *i.e.,* that Mr. Chin's grievance for violation of provisions of the labor contract was settled by the USPS and the APWU without going to arbitration, in order to obtain judicial review of his breach of contract claim, he must also demonstrate that the union breached its duty of fair representation.

Contrary to defendant's argument, this requirement does not make a suit against the union a prerequisite to bringing his claim against the USPS, as determined in the September 7, 1988 order.[3]

It is obvious from plaintiff's complaint, and from the various responses he filed in this case, that plaintiff is reticent to allege the union breached its duty of fair representation. Consequently, plaintiff has also attempted to make an allegation that his breach of contract claim is grounded not in the labor contract, but rather in some general contractual obligation owed to him as an employee by the USPS to provide adequate security. For reasons discussed below, plaintiff reasserted this allegation in his response of December 29, 1988.

One question raised in the pleadings is whether plaintiff timely filed this complaint. Under federal labor law, as established by the Supreme Court in the *DelCostello* case, if plaintiff's claim is derived from the labor contract, plaintiff would have six months from the date his grievance was settled (June 10, 1987) to file suit in court. Mr. Chin filed his complaint in this court on February 22, 1988. Defendant argues federal labor law is applicable because plaintiff's claim is grounded in the labor contract, and the complaint was not filed within the six-month time period. Plaintiff responds that since he is alleging the USPS breached a general contractual obligation to provide parking area security owed to him as a USPS employee, rather than an obligation owed to him as a bargaining unit employee pursuant to the labor contract, the six-year time period provided in 28 U.S.C. §§ 2401, 2501 regarding claims filed against the government should apply. In the alternative, if it is determined that plaintiff's cause of action is grounded in the labor contract, plaintiff claims he had no knowledge his grievance

---

**3.** The defendant's argument that the union is a necessary party to this claim over whom the court has no jurisdiction so the claim must be dismissed pursuant to *United States v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941), is not sustained. That is, as mentioned in n. 11 of the September 7, 1988 order, if

appropriate in a Claims Court proceeding, a third party alleged to have an interest in the subject matter may be notified and may enter the proceeding and present any defense to the claim. Rule 14(a); *Sun Shipbuilding & Dry Dock Co. v. United States,* 204 Ct.Cl. 915 (1974).

had been settled by agreement, dated June 10, 1987, until defendant filed its motion to dismiss on May 16, 1988. Thus, plaintiff raises the issue whether the six-month period to file his complaint had run by the date he became aware that his grievance had been settled. For that reason, the September 7, 1988 order indicated that more information was needed before a determination regarding the timeliness of the complaint could be made.[4] Although given the opportunity, neither party responded regarding this matter. Since defendant's motion is granted on other grounds, no decision is made as to whether plaintiff timely filed the complaint in this case.

Another reason plaintiff asserts that he is not seeking review of the agreement reached regarding his grievance by the USPS and the APWU is that the security obligations set forth in Article 20 extend to employees going to and from the employee parking lots, before and after work shifts. Thus, plaintiff claims the security provision creates obligations which go beyond matters which are within the "scope of employment" of employees, as that term had been applied in claim determinations under the FECA. Therefore, according to plaintiff, a grievance filed pursuant to the contractual grievance procedures, based on an alleged violation of the security provision, resulting in his injury after his work shift ended while he was not on USPS property, could not result in an enforceable remedy, for the reason that it would be beyond "scope of employment" matters.[5] Consequently, plaintiff alleges that he must seek a remedy for his injuries outside of the provisions of the labor contract or, in other words, under general contract principles.[6]

■ Even if plaintiff is correct in his assertion that the security provision regarding employees' parking areas goes beyond matters which are within the "scope of employment" of USPS employees, the provision would concern a permissive subject of bargaining, which was agreed to by the parties to the contract. In *Int'l Brotherhood of Electrical Workers, AFL–CIO v. Hechler*, 481 U.S. 851, 107 S.Ct. 2161, 2167, 95 L.Ed.2d 791 (1987), the Court stated that a party, labor union or employer, "may assume a responsibility towards employees by accepting a duty of care through a contractual arrangement * * *. The threshold inquiry for determining if a cause of action exists is an examination of the contract to ascertain what duties were

**4.** *See generally Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573 (Fed.Cir.1988).

**5.** In *Allied Chemical & Alkali Workers of America v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971), the Court held that the collective bargaining obligation extends only to the "terms and conditions of employment" of the employer's "employees." 404 U.S. at 164, 92 S.Ct. at 390. In that case, the issue was whether the company committed an unfair labor practice (ULP) by offering retirees (former employees) an exchange for their withdrawal from a negotiated health insurance plan without bargaining with the union over the contract modification. The Court held that, even if there was a "modification," the "modification" is a prohibited ULP only when it changes a term that is a mandatory rather than a permissive subject of bargaining. 404 U.S. at 185, 92 S.Ct. at 400. Since the "modification" concerned retirees rather than active employees, a permissive rather than a mandatory subject was at issue and the company had no obligation to bargain thereover. Thus, the company did not commit an ULP. The Court in that case made a firm distinction between mandatory and permissive subjects of bargaining. The Court stated at 404 U.S. at 188, 92 S.Ct. at 402: "The remedy for a unilateral mid-term modification to a permissive term lies in an action for breach of contract * * *." Moreover, in n. 20 at 404 U.S. 181, n. 20 at 92 S.Ct. 398, the Court indicated that, if a vested contract right is altered, the beneficiary of the right under the contract would have a federal remedy under § 301 of the Labor–Management Relations Act for breach of contract.

**6.** In this connection, plaintiff argues that whether he has a remedy under the FECA and under the labor contract is determined by whether his injury occurred within the "scope of his employment." According to plaintiff, since he was not eligible for COP pursuant to the FECA, for the same reasons, *i.e.*, he was not injured performing his job duties, or on his employer's premises, or during his work hours, he does not have a remedy under the contract. Plaintiff provides no support for this argument. As is discussed, *supra*, plaintiff is not remediless under the contract, for the reasons he states. The OWCP decision that plaintiff was not eligible for COP is separate from, and would have no effect on, any determination regarding the question of Mr. Chin's remedy under the labor contract for the alleged breach of the security provision.

accepted by each of the parties and the scope of those duties." [7] Since the USPS assumed an obligation to provide security regarding employee parking areas through a contractual arrangement, plaintiff may bring suit for breach of contract based on a violation of that provision. However, because this complaint is dismissed on other grounds, no decision is reached regarding this alleged breach of the contract by the USPS. In any event, plaintiff's argument that he is remediless under the labor contract, because the security provision involves matters which go beyond the "scope of employment" of USPS employees and, thus, he must look to general contract principles if his injury is to be remedied, is not sustained.

In summary, as indicated in the September 7, 1988 order, and now restated, plaintiff's claim, as pleaded, is determined to be an assertion that the USPS breached its obligation under the labor contract to provide USPS employees adequate security in parking areas. Prior to filing suit herein, plaintiff used the contractual grievance procedures in order to obtain redress for his injuries. That is, Mr. Chin filed a grievance alleging he was injured as a direct result of the USPS' breach of the labor contract. The grievance was settled by the APWU and the USPS without going to arbitration and without notice to plaintiff, he asserts, and defendant does not deny. Since plaintiff did attempt to utilize the contractual grievance procedures prior to bringing suit in this court,[8] according to the *DelCostello* case, Mr. Chin may choose to sue the USPS for breach of the labor contract.

In addition, plaintiff must be prepared and be willing to demonstrate breach of the duty of fair representation by the union. As mentioned, plaintiff states he is not asserting a claim against his union. However, in his last response, plaintiff states that, if his claim that the USPS breached a general contractual obligation to him is not sufficient to withstand the defendant's motion to dismiss or motion for summary judgment, he will attempt to make "an allegation regarding fairness of representation." In this regard, Mr. Chin opines that, in all probability, judicial review of his breach of contract claim pursuant to a § 301/unfair representation analysis will be "a totally futile exercise."

As mentioned, defendant has moved for summary judgment pursuant to RUSCC 56. In *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986), the Supreme Court held:

"Under Rule 56(c), summary judgment is proper "if the pleadings * * * show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily ren-

---

**7.** In *Int'l Brotherhood of Electrical Workers, AFL–CIO v. Hechler,* 481 U.S. 851, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987), an employee brought suit against her union alleging that the union had breached its contract with her employer, as to which she was a third-party beneficiary. She argued the union had a duty of care under the contract to insure her a safe work place; however, the union allowed her to be assigned to work in a dangerous location where she was injured.

**8.** On this subject the Supreme Court stated in *DelCostello v. Int'l Brotherhood of Teamsters,* 462 U.S. at 163, 103 S.Ct. at 2290: "Ordinarily * * * an employee is required to attempt to exhaust any grievance or arbitration remedies

provided in the collective bargaining agreement" prior to bringing suit against his employer for breach of the contract, pursuant to § 301 of the LMRA; and, in *Chemical Workers v. Pittsburgh Plate Glass Co.,* 404 U.S. 157, at 188, n. 24, 92 S.Ct. 383, at 402, n. 24 since there was no indication whether the labor contract provided for arbitration that would have been applicable in that case, the Court stated it was expressing no opinion on the relevance of such a provision to the question it was deciding. As discussed above, in this case, there is an applicable grievance/arbitration procedure which plaintiff attempted to exhaust prior to bringing his breach of contract suit herein.

ders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

In this case, under federal labor law, in order to obtain judicial review of a settlement agreement regarding a grievance filed pursuant to final and binding contractual grievance procedures, plaintiff's claim must be a hybrid breach of contract/unfair representation suit. Plaintiff herein has not alleged and, furthermore, states, in essence, he cannot prove the union breached its duty of fair representation. Thus, pursuant to the Court's decision in *Celotex Corp.*, as quoted above, RUSCC 56 requires the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. As the Court held, where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts thereby become immaterial and, consequently, there can be "no genuine issue as to any material fact." In this case, therefore, the moving party (defendant) is entitled to judgment as a matter of law under RUSCC 56 because the nonmoving party (the plaintiff) has failed to make a sufficient showing on an essential element of his case as to which he has the burden of proof. In other words, summary judgment must be entered against plaintiff who has failed to allege, ergo, who has failed to make a sufficient showing regarding the union's breach of the duty of fair representation, an essential element of plaintiff's claim.

Consequently, defendant's motions for reconsideration of the September 7, 1988 order, and for summary judgment, are granted. Therefore, it is ORDERED that the complaint filed in this case be dismissed. No costs.