Per Curiam:
The plaintiff, an officer in the United
States Air Force, received an award under 10 U.S.C. § 1124 for a meritorious suggestion, namely the use of periscopes *712 for certain purposes in the Minuteman missile silos. He contends that the award is insufficient, and in arriving at the amount thereof, aggregating $8,905, the Air Force has been arbitrary and capricious, and has failed to follow its own regulations, according to him. Defendant moves for summary judgment, but we conclude that there are issues of fact requiring trial.
Defendant’s first point is that making any such award is discretionary, and therefore any claim for one, or an increase in one, fails to pass the analysis prescribed by the Supreme Court in United States v. Testan, 424 U.S. 392 (1976).
The statute, § 1124, supra, was intended to extend to servicemen, with limitations not here relevant, the eligibility to receive cash awards for valuable suggestions, made to and adopted by their agencies, that civilian Government employees had long enjoyed under the statute formerly codified as 5 U.S.C. § 2121 and ff., but now § 4503. See legislative history at 2 U.S. Code Congressional and Administrative News (1965) p. 3161 and ff. The older statute thus having been the model, decisions under it are relevant in construing the newer one. Claims under the old one have been before this court several times, and it has been generally assumed that the standard for judicial review is abuse of discretion. Shaller v. United States, 202 Ct. Cl. 571, cert. denied, 414 U.S. 1092 (1973); Serbin v. United States, 168 Ct. Cl. 934 (1964); and Martilla v. United States, 118 Ct. Cl. 177 (1950). Kempinski v. United States, 164 Ct. Cl. 451, cert. denied, 377 U.S. 981 (1964), can be read as a flat denial of jurisdiction, but there the employee’s suggestion was rejected, while here it was adopted and put in effect, a distinction of significance as we will show. In all these cases the court was not persuaded that discretion was abused, a fact which detracts from the authority the cases might otherwise have as to jurisdiction; indeed, in Martilla the court expressly passed over, at 118 Ct. Cl. 182, whether it could ever have jurisdiction of such a claim. Defendant’s instant motion severs the question of jurisdiction from the merits, and requires us to decide it before addressing the merits.
*713 By the Testan analysis, the plaintiff in this court under the Tucker Act, 28 U.S.C. § 1491, must show a clear-cut entitlement to monetary relief, under law apart from the Tucker Act, the latter simply waiving sovereign immunity and providing the forum for adjudication. It may be conceded, arguendo, as defendant asserts, that a claim, the allowance of which is wholly discretionary with an executive official, cannot be the subject of a Tucker Act suit. Grismac Corp. v. United States, 214 Ct. Cl. 39, 48, 556 F.2d 494, 499 ( 1977), construing 50 U.S.C. § 1431-1435. Testan, supra, reversed a decision of this court construed to hold the contrary. But there is a lot more to the instant claim than that.
The Tucker Act recognizes contracts implied in fact, as fully as if they were express. Such contracts have had a major role in our jurisprudence from early days. Before enactment of the present 28 U.S.C. § 1498, the court rejected patent infringement claims in general as sounding in tort. Schillinger v. United States, 24 Ct. Cl. 278 (1889), aff’d, 155 U.S. 163 (1894). But it allowed suits on patent claims on an implied contract theory, if the inventor offered the invention to the Government, expecting it to be tried, and the Government used it, expecting to be called on to pay. Berdan Fire-Arms Mfg. Co. v. United States, 25 Ct. Cl. 355 (1890), 26 Ct. Cl. 48 (1890), aff’d, 156 U.S. 552 (1895). More recently, this court has applied similar implied contract reasoning where a claimant had submitted an unpatented design in confidence, and' defendant circulated it to all its other competing vendors. Padbloc Co. v. United States, 161 Ct. Cl. 369 (1963). A claim not unlike Padbloc’s was made in Grismac, supra, but foundered because the alleged intellectual property there was considered a mere outsider’s suggestion, which defendant’s officials had not been given authority to use appropriated funds to buy. Padbloc was distinguished by pointing to 10 U.S.C. § 2386, which plainly authorized purchase of the designs Padbloc had submitted. It was also pointed out that under 5 U.S.C. § 4503, suggestions by defendant’s employees fared the same as designs.
Here, following enactment of the statute, which in effect authorized purchase of suggestions from service members, *714 the following events took place: (1) The Secretary of the Air Force published a procedure, Air Force Manual 900-4, February 1970 (Defendant’s Exhibit 2) by which a serviceman could submit a suggestion, it would be evaluated, and if adopted would be implemented, and his compensation would be determined according to procedures and guidelines set forth in the manual. (2) Plaintiff, a serviceman, submitted a suggestion. (3) It was adopted and put in effect to the great benefit of the Air Force, allegedly a saving of $45,000,000. (4) Plaintiffs claim for compensation was considered and an award made.
We can put aside a case, as in Kempinski, supra, where the suggestion was rejected. Here it was accepted and acted on. We think clearly, under authority of Berdan and Padbloc, at the end of step 3, the Secretary had become bound by an implied contract. Its terms, at a minimum, required him to establish plaintiffs compensation without abuse of discretion and within the guidelines he had published, if there be any difference between these two concepts.
Besides the Berdan and Padbloc cases, the situation also offers some parallels to the implied contract rights we have imputed to one who has submitted an unsuccessful bid in response to a Government advertisement for bids. Heyer Products Co. v. United States, 135 Ct. Cl. 63, 140 F.Supp. 409 (1956); Keco Industries, Inc. v. United States, 192 Ct. Cl. 773, 428 F.2d 1233 (1970) and their progeny. We think plaintiffs case is stronger because he is plainly the intended beneficiary of 10 U.S.C. § 1124 while that is not so certain as to the unsuccessful bidder.
Thus, we think that the Secretary may have originally had uncontrolled and unreviewable discretion in the premises, but as he published procedures and guidelines, as he received responsive suggestions, as he implemented them and through his subordinates passed upon compensation claims, we think by his choices he surrendered some of his discretion, and the legal possibility of abuse of discretion came into the picture. Defendant seems to concede the rightness of this analysis at page 4 of its reply brief when it says: "However, once the Secretary decides in his discretion to make an award, the appropriate regula *715 tions must be followed, as plaintiff contends, and the failure to do so might well provide a cause of action for the individual concerned.” At some point plaintiff acquired a legal entitlement by implied contract, more than just the hope or expectation which was all he had originally. As under many other implied contract situations, what remained for adjudication was quantum.
Some further issues may be disposed of more quickly. Defendant says plaintiff, having accepted $8,905, is barred from claiming more by § 1124(d)(1) of the statute, which provides that the acceptance of an award shall constitute
(1) an agreement by the member that the use by the United States of any idea, method, or device for which the award is made may not be the basis of a claim against the United States by the member, his heirs, or assigns * * *.
Plaintiff argues that this means claims for compensation other than by incentive award. The legislative history seems to support this view as it gives, to illustrate what is meant, the case of an employee patenting his invention and claiming royalties under the patent. 2 U.S. Code Congressional and Administrative News (1965), supra, at 3164. Moreover, defendant has not in administration of the Act taken the position it does here. Thus plaintiff did not get his $8,905 all at once, but in driblets, and acceptance of one driblet was not taken as barring payment of the next one. If Congress had meant that acceptance of any incentive payment should bar any claim for additional incentive award, it could have said so. Should the Secretary desire, he could no doubt change the procedures so that a paid claimant would know and agree that this would occur. The Secretary could learn from any insurance company, or anyone else in the business of settling claims, how to do it. Instead, we see him actually suggesting in AFM-900-4, par. 5-3a(3), that an initial cash award not to exceed $50 be paid when delays are foreseen in determining the full value of an adopted contribution, but it is reasonably certain it will be over $500. We may be sure he does not intend this as a trap for claimants.
For tangible benefits, awards are payable on a sliding scale and for those over $100,000, the scale allows only $5 *716 for each $5,000 of benefits. The benefits can be only those which inure in the first year of operation. Defendant’s final retreat argument is that the total of $8,905 is correctly calculated in view of these provisions. The plaintiff denies it, saying that the benefits were $45,000,000, that there was a question when the first year of operation might be said to begin, etc., etc. It may be possible on pretrial to establish that there is no real triable issue of fact, but we are unable to do it just by looking at the motion and opposition and documents attached. It is not likely to be feasible to make a disputed quantum determination on summary judgment, and we decline to attempt it here. Plaintiff does not attack the regulation, but only says that if correctly applied, it would support his position. Defendant says if the administrative interpretation of the regulation is reasonable, we must accept it even if we think some other interpretation is more reasonable. We leave this to the Trial Division to pass on.[1]
Accordingly, defendant’s motion for summary judgment is denied and the cause is remanded to the Trial Division for further proceedings.

 The statute, 10 U.S.C. § 1124(f), places a $25,000 limit on an incentive award, and plaintiffs further recovery, if any, would be limited by that ceiling.