Eugene G. CHIN, Plaintiff–Appellant,

v.

The UNITED STATES,
Defendant–Appellee.

No. 89–1393.

United States Court of Appeals,
Federal Circuit.

Oct. 31, 1989.

Unpublished Opin. Issued Oct. 31, 1989.

Published Opin. Issued Nov. 29, 1989.

Lee Robert Arzt, Richmond, Virginia, for plaintiff-appellant.

Andrew L. Jiranek, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., for defendant-appellee. With him on the brief were Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director. Also on the brief were Jesse L. Butler, Asst. Gen. Counsel and James A. Friedman, Office of Labor Law, U.S. Postal Service, of counsel.

Before RICH, MAYER, and MICHEL, Circuit Judges.

MICHEL, Circuit Judge.

## DECISION

Eugene G. Chin appeals the United States Claims Court's Order of February 7, 1989, granting the government's motion for summary judgment as to Chin's Tucker Act claim based on the government's breach of an employment contract between him and the United States Postal Service, and dismissing the Complaint. *Chin v. United States*, 16 Cl.Ct. 274 (1989). We vacate the grant of summary judgment and affirm the dismissal of the Complaint not for the reasons stated in the Order, but for lack of subject matter jurisdiction.

## BACKGROUND

Chin was a United States Postal Service employee and member of the American Postal Workers Union (APWU) when in 1985 he was leaving work and saw another Postal Service employee being assaulted in a Postal Service parking lot. Chin, who was on a public street, went to aid the co-worker and was shot and wounded before reaching the parking lot. Chin sought benefits under the Federal Employees' Compensation Act (FECA), but was denied any because he was found not to have been "in the performance of duty when the injury occurred." Additionally, Chin filed a grievance pursuant to the collective bargaining agreement between the Postal Service and APWU. Chin's grievance was settled by the APWU without Chin getting any monetary compensation and without submitting the grievance to binding arbitration. He later filed a Complaint in the United States Claims Court for breach of contract damages, allegedly not knowing that his grievance was settled. The government moved for summary judgment, which was granted, and the Claims Court ordered that the case be dismissed.

## OPINION

Congress established a system under which Postal Service employees could, through their union representative, collectively bargain over the terms and conditions of employment. 39 U.S.C. §§ 1202–

1206 (1982). The only proscription on what can be bargained over are certain benefits over which Congress specifically retained control—retirement, veterans' preference, and workers' compensation. *See* 116 Cong. Rec. 20,229 (1970) (Rep. Udall); Letter from Comptroller General Keller to Hon. William L. Scott (Mar. 31, 1970), *reprinted in* H.R.Rep. No. 1104, 91st Cong., 2d Sess. 67–69 *and* 1970 U.S.Code Cong. & Admin. News 3649, 3709–10.

Chin asserts that the Postal Service breached a "general" employment contract with him that is separate and apart from the "labor" contract the government entered into with his union. He does, however, expressly rely upon article 20, section 2 of his union's collective bargaining agreement as establishing the obligations allegedly breached. That section, referred to hereafter as the "security provision," generally places a duty upon the Postal Service to take measures to provide security for its employees.

Chin argues that his union is precluded from helping him recover for any breach of the collective bargaining agreement that does not occur "within the scope of employment," i.e., not on Postal Service premises or not during working hours.[1]

## I. *"General" Contract or Collective Bargaining Contract?*

Chin has erroneously equated the limitations on liability under FECA, 5 U.S.C. §§ 8101–8193 (1988), with the scope of bargainable and enforceable issues in labor contracts under the Postal Reorganization Act (PRA), 39 U.S.C. §§ 101–5605 (1982 & Supp. V 1987). Under FECA an employee can receive compensation only for injuries received while in the performance of duty, i.e., " 'arising out of and in the course of employment.' " *Wallace v. United States*, 669 F.2d 947, 953–54 (4th Cir.1982) (quoting *In re Krasprzak*, 27 Employees Compensation Appeals Board 339

(1979)). Under the PRA, however, any issue not proscribed by statute can be bargained for, including personal security during off-duty activities occurring off Postal Service premises.

Further, Chin's reliance on the distinction between "mandatory" and "permissive" bargaining issues is misguided. Permissive bargaining issues are not outside the bargained for promises enforceable by a union as Chin suggests, but are merely subjects for which the employer need not, but *may*, bargain. Mandatory bargaining issues, such as terms and conditions of employment, on the other hand, must be bargained for. *See generally* R. Gorman, *Basic Text on Labor Law* 496–98, 503–09 (1976).

Consequently, it is irrelevant whether the security provision of the collective bargaining agreement here concerns a permissive or mandatory bargaining issue because, once the Postal Service obligated itself, any dispute arising under article 20, section 2 automatically fell within the contract's grievance-arbitration procedure and within the union's right to enforce. *See Bowen v. United States Postal Serv.*, 459 U.S. 212, 225–26, 103 S.Ct. 588, 596–97, 74 L.Ed.2d 402 (1983).

Because the security provision of the collective bargaining agreement was fully enforceable by the union, we conclude that Chin has failed to show a "general," i.e., personal services employment, contract between himself and the Postal Service, or to establish that he is a third party beneficiary of a "government" contract, that could serve as a basis for Tucker Act jurisdiction in the Claims Court. *See* 28 U.S.C. § 1491 (1982). Instead he has merely mischaracterized as a "general" contract claim, a collective bargaining agreement claim, which is governed exclusively by mandatory grievance procedures in the collective bargaining agreement and which,

---

1. Although Chin's Complaint quotes the Department of Labor's (DOL's) determination on his workers' compensation request as stating that his injury did not occur within the "scope of employment," we are unable to find DOL's use of this language. *See* Joint Appendix at 5, 133–

35, 137, *Chin v. United States,* No. 89–1393 (Fed. Cir. filed Apr. 13, 1989). Instead we find that DOL appropriately utilized language, "while in the performance of duty," which is an explicit requirement under FECA. *Id.* at 133–35, 137; *see* 5 U.S.C. § 8102 (1988).

therefore, is subject to judicial review only as provided by the PRA.

## II. *Jurisdiction in the Claims Court or District Court?*

■ Although the Claims Court similarly ruled that only a collective bargaining claim existed in this case, it construed Chin's pleadings to assert, at least inferentially, that the union breached its duty of fair representation, a prerequisite for a postal employee to assert a labor union contract claim against the government. *See* 39 U.S.C. § 1209 (1982); *Chin v. United States*, 16 Cl.Ct. 274, 279 (1989). Apparently assuming that this and grieving were the only elements Chin had to assert to establish *its* jurisdiction (as opposed to district court jurisdiction), the Claims Court then decided the case on the merits.[2] It did so in clear conflict with prior Claims Court holdings that that court lacks subject matter jurisdiction over such labor contract claims. *See Kellus v. United States*, 13 Cl.Ct. 538, 542 (1987); *Jackson v. United States*, 10 Cl.Ct. 691, 694 (1986); *McPherson v. United States*, 2 Cl.Ct. 670, 673 (1983). We conclude that the earlier Claims Court cases are correct and that this case should not have been decided on the merits.

Through the PRA, Congress established a system by which Postal Service employees could negotiate and grieve disputes with the Postal Service as a partial replacement of the traditional civil service merit system. *See* 116 Cong.Rec. 20,229–30 (1970) (statements of Reps. Udall and Olsen). This new system was intended to provide Postal Service employees greater opportunities for career development and advancement because of the new right to bargain collectively for benefits. *Id.* at 20,203 (Rep. Brasco). In conjunction with its decision to incorporate collective bargaining into the Postal Service labor relations scheme, Congress expressly permitted employees to sue the Postal Service in federal district court for claims based upon the union contract when the union is alleged to have failed to protect the employee's rights. *See* 39 U.S.C. § 1208 (1982); *Trent v. Bolger*, 837 F.2d 657, 657–59 (4th Cir.1988). Congress did not, however, authorize such claims to be brought in the Claims Court. Nor is there any indication that in developing this postal employee labor relations system, Congress intended to depart from the "well-established principle that, absent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government." *Chu v. United States*, 773 F.2d 1226, 1229 (Fed.Cir.1985); *see Kania v. United States*, 650 F.2d 264, 267–68, 227 Ct.Cl. 458, *cert. denied*, 454 U.S. 895, 102 S.Ct. 393, 70 L.Ed.2d 210 (1981). Indeed, although the Postal Service is now an independent establishment of the executive branch and not an executive agency, the legislative history makes clear that Postal Service employees are government employees and states that "[t]he Postal Service may *appoint* ... employees." H.R.Rep. No. 1104, 91st Cong., 2d Sess. 9–10 (emphasis added), *reprinted in* 1970 U.S.Code Cong. & Admin.News 3658.

In neither the PRA nor its legislative history is there any indication that Congress intended that claims based on Postal Service collective bargaining agreements may be brought in the Claims Court. Indeed, by specifying suit by Postal employees in district court, 39 U.S.C. § 1208 (1982), Congress could be said to intend to preclude suit in the Claims Court, particularly when it has generally not authorized litigation of government labor contract claims in the Claims Court, and when, absent a contract, Claims Court section 1491 jurisdiction has generally been viewed as arising only from clear statutory entitlement. *See United States v. Sherwood*, 312 U.S. 584, 586–88, 61 S.Ct. 767, 769–71, 85 L.Ed. 1058 (1941). Accordingly, we conclude that the United States Claims Court lacks subject matter jurisdiction over PRA labor contract claims, and therefore vacate the summary judgment but affirm the

---

**2.** The Claims Court held that Chin had conceded the legal insufficiency of his assertion, admitting that "he cannot prove the union breached its duty of fair representation." 16 Cl.Ct. at 280.

judgment of dismissal of the Complaint not because of the conclusions on the merits stated in the Order, but for lack of jurisdiction.

## COSTS

Appellant is assessed all costs.

AFFIRMED IN–PART, VACATED IN–PART.