James **HAYES, Jr.**

v.

The **UNITED STATES.**

No. 565–88C.

United States Claims Court.

April 17, 1990.

---

Henry D.H. Olinde, Jr., New Orleans, La., for plaintiff.

Paul David Langer, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant.

## OPINION

YOCK, Judge.

This case is before the Court on the Government's Motion to Dismiss for lack of subject matter jurisdiction. For the reasons stated below, the Motion to Dismiss is granted, and the plaintiff's complaint is to be dismissed.

### Factual Background

Plaintiff, James Hayes, Jr., was an employee of the United States Postal Service (USPS) and is now retired. While employed at the Post Office in New Orleans, Louisiana, he submitted a suggestion to modify the Mark II machines pursuant to the Employee Suggestion Program. The USPS recognized Mr. Hayes' suggestion and presented him with a Certificate of Award and an award check in the amount of $104. This award was based on the benefits to the USPS from the implemented suggestion.

It is now the plaintiff's contention that his suggestion has since been implemented on a nationwide basis, and, therefore, he is now entitled to additional compensation based on the additional benefits that the USPS is receiving.

Plaintiff originally filed suit in the United States District Court for the Eastern District of Louisiana, alleging a breach of the employment contract between himself and the USPS. The district court, however, dismissed the plaintiff's claim for lack of subject matter jurisdiction. On appeal, the Fifth Circuit found that the plaintiff was a Government contractor and that his suggestion was a "procurement of services" under the Contract Disputes Act (CDA) of 1978. 41 U.S.C. §§ 601 *et seq.* (1982 & Supp. V 1987). According to the Fifth Circuit, any claim of Mr. Hayes "must be pursued under the CDA and only in the U.S. Court of Claims [sic]." *Hayes v. United States Postal Serv.*, 859 F.2d 354, 356–57 (5th Cir.1988). Plaintiff then filed his action in this Court on September 26, 1988, seeking damages, interest, and costs.

### Discussion

In its motion to dismiss, the Government argues that no statute, regulation, or express or implied-in-fact contract exists that would entitle the plaintiff to any damages because of the USPS's alleged failure to adequately compensate him under the Employee Suggestion Program. Thus, the jurisdiction granted to this Court by the Tucker Act, 28 U.S.C. § 1491 (1982 & Supp. V 1987), over monetary claims founded on the Constitution, an Act of Congress, or any express or implied contract with the United States does not provide a basis for the plaintiff's claim.

Plaintiff's opposition to the motion to dismiss alleges that a contract arose between the plaintiff and the USPS when the Postal Service accepted and implemented his suggestion. According to the plaintiff, the contract arose separately from his contract of employment, and the USPS subsequently violated this contract by awarding him an insufficient amount of compensation.

■ As asserted by the Government, the Claims Court is a specialized Court and can only entertain claims against the United States when a constitutional provision, a statute, a regulation of the executive department, or a contract "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *United States v. Testan*, 424 U.S. 392, 401–02, 96 S.Ct. 948, 954–55, 47 L.Ed.2d 114 (1976) (quoting *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1008–09 (1967)).

■ Despite the Fifth Circuit's conclusion that the USPS Employee Suggestion Program is authorized by 5 U.S.C. § 4503, *Hayes*, 859 F.2d at 356, that statute is not applicable to the USPS. Section 4503 refers to an agency, and agency is defined as an executive agency. 5 U.S.C. § 4501(1)(A) (1988). Under section 105, executive agency is defined as an executive department, a Government corporation, and an independent establishment. 5 U.S.C. § 105 (1988). Section 104 of title 5 of the United States Code explicitly states, however, that the USPS is *not* an independent establishment within the executive branch. This exclusionary language was added as a result of the Postal Reorganization Act (PRA), 39 U.S.C. §§ 101 *et seq.* (1982 & Supp. V 1987), which was enacted to allow the Postal Service to be operated more like a business. *See Loeffler v. Frank*, 486 U.S. 549, 556, 108 S.Ct. 1965, 1970, 100 L.Ed.2d 549 (1988) (quoting *Franchise Tax Bd. v. United States Postal Serv.*, 467 U.S. 512, 520, 104 S.Ct. 2549, 2554, 81 L.Ed.2d 446 (1984)).

There are no ambiguities within 5 U.S.C. § 4503 that could be interpreted so as to make this statute applicable to the USPS. Furthermore, only those sections of title 5 that are specifically enumerated in the PRA apply to the Postal Service, and section 4503 is not listed. 39 U.S.C. § 410(a) (1982 & Supp. V 1987). The USPS is exempt from all other "Federal laws dealing with public or federal contracts, property, works, officers, employees, budgets, or funds," *id.*, unless they are itemized in that section. *See United States v. Electronic Data Systems Federal Corp.*, 857 F.2d 1444 (Fed.Cir.1988) (Congress expressly excluded the Postal Service from the reach of all federal procurement laws not specifically enumerated).

Clearly, the USPS Employee Suggestion Program does not fit under the authority of 5 U.S.C. § 4503, and thus this statutory section cannot form the basis for jurisdiction within this Court. The Fifth Circuit's conclusion to the contrary is simply in error.

The USPS Employee Suggestion Program is outlined in Part 630 of the Postal Service Employee and Labor Relations Manual, as well as in USPS Handbook EL–605, *The Employee Suggestion Program*, which is available to interested employees. The question of whether personnel manuals are properly considered as regulations, which could form the basis of jurisdiction within this Court, has been previously raised before both the Claims Court and its predecessor, the United States Court of Claims. It remains, however, to be conclusively answered. *See Fiorentino v. United States*, 221 Ct.Cl. 545, 552–54, 607 F.2d 963, 968 (1979), *cert. denied*, 444 U.S. 1083, 100 S.Ct. 1039, 62 L.Ed.2d 768 (1980) (Government manuals, handbooks, and in-house publications contrary to statutes and regulations published in Federal Register not binding on Government); *Piccone v. United States*, 186 Ct.Cl. 752, 770–74, 407 F.2d 866, 877 (1969) (Nichols, J., concurring) (whether Federal Personnel Manual has status of regulation unresolved); *McGrath v. United States*, 1 Cl.Ct. 236, 238–39 (1982), *aff'd*, 714 F.2d 161 (Fed.Cir. 1983) (Federal Personnel Manual Supplement held not to be regulation).

■ However, it is not necessary that this Court resolve this question in order to

decide whether jurisdiction exists pursuant to the Tucker Act requirement of a money-mandating regulation. The regulation component of the Tucker Act expressly limits jurisdiction to claims based on regulations of an "executive" department, and since the enactment of the PRA, the Postal Service is not an executive department as defined in 5 U.S.C. § 101 (1988). In fact, the PRA specifically repealed that portion of 5 U.S.C. § 101 which designated the Postal Service as an executive department. *See* Pub.L. No. 91–375, § 6(c)(1), 84 Stat. 719, 775 (1970), *reprinted in* 1970 U.S.Code Cong. & Admin.News 842, 911. Therefore, regardless of whether the USPS Employee Suggestion Program is a regulation, it cannot be a regulation of an executive department and thus cannot form the basis for a regulatory claim cognizable under the Tucker Act. *See United States v. Connolly*, 716 F.2d 882, 885 (Fed.Cir.1983), *cert. denied*, 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).

In his defense to the Government's instant motion, the plaintiff is echoing the Fifth Circuit's reasoning that this claim is not a part of his employment/labor relations contract with the USPS, but rather is an implied contract for the procurement of services under the CDA. To support this reasoning, both the plaintiff and the Fifth Circuit rely on *Griffin v. United States*, 215 Ct.Cl. 710 (1978). Unfortunately, *Griffin* does not govern Mr. Hayes' claim.

Although the issue in *Griffin* centered on an insufficient award for a suggestion that was submitted to and implemented by the United States Air Force, similar to the issue at bar, the suggestion and award in Officer Griffin's case came under the auspices of a statute, namely 10 U.S.C. § 1124. As recounted by the Court of Claims:

> The statute, § 1124, *supra*, was intended to extend to servicemen, with limitations not here relevant, the eligibility to receive cash awards for valuable suggestions, made to and adopted by their agencies, that civilian Government employees had long enjoyed under the statute formerly codified as 5 U.S.C. § 2121 and *ff.*, but now § 4503.

*Griffin*, 215 Ct.Cl. at 712. The *Griffin* court went on to state that the enactment of the statute, in effect, authorized the purchase of suggestions from service members. *Id.* at 713. Therefore, the court found that an implied contract had arisen after (1) the Air Force published a procedure for suggestions to be submitted and awards to be determined; (2) Officer Griffin submitted a suggestion; and (3) the suggestion was adopted and implemented to the benefit of the Air Force. *Id.* at 714.

As for Mr. Hayes' claim, however, the statute that authorized the purchase of the suggestion from Officer Griffin, 10 U.S.C. § 1124, does not apply since Mr. Hayes is not a serviceman, and furthermore, the parallel statute that applies to civilian Government employees, 5 U.S.C. § 4503, does not apply either since Mr. Hayes' employer, the USPS, is not covered under that section of the statute as previously discussed. While the Court of Claims found that Officer Griffin was the intended beneficiary of 10 U.S.C. § 1124, *Griffin*, 215 Ct.Cl. at 714, Mr. Hayes cannot point to any like statute and claim he is the intended beneficiary.

The implied contract argument did not originate with the plaintiff, but rather with the Fifth Circuit. Despite Mr. Hayes' assertion in the district court proceeding "that the Employee Suggestion Program and the rules promulgated by the USPS to implement it *are part of the employment contract* he had with the USPS," *Hayes*, 859 F.2d at 356 (emphasis added), the Fifth Circuit found that, under *Griffin*, any such contract between Mr. Hayes and the USPS was not a part of an employment contract and that "the conclusion that the CDA applies to such an implied suggestion box contract follows logically." *Id.* There is no question that in *Griffin* the contract was not a part of any employment contract since it was statutorily based; however, a statutory-based theory does not hold true for the plaintiff.

Furthermore, it is not logical to conclude that the USPS's Employee Suggestion Program constitutes the "procurement of services" so as to fall within the parameters

of the CDA. *See* 41 U.S.C. § 602(a)(1)–(2) (1982 & Supp. V 1987). Merely because the CDA provides that the USPS is within the scope of the statute does not justify the conclusion that the USPS Employee Suggestion Program is a procurement of services, nor does it authorize this Court or the Fifth Circuit to ignore the provisions of the PRA.

The PRA converted the Postal Service into an independent establishment in the executive branch and provided a framework for postal employees to bargain collectively with management over pay and working conditions. H.R.Rep. No. 1104, 91st Cong., 2d Sess. 2, *reprinted in* 1970 U.S.Code Cong. & Admin.News 3649, 3650. In the legislative history of the PRA, the enumerated purposes of the bill included the following:

> [To] [i]mprove postal employee-management relations, to recognize—by law—that postal employees have the right freely to select collective bargaining representatives of their own choosing, and *to give postal employees* a voice in determining their conditions of employment and *a real stake in the quality of the postal service that they provide* to the public; and
>
> Adjust the salaries of postal employees so as to compensate for the limited opportunities for career advancement that most postal workers have traditionally faced and *to allow postal workers to share in the benefits of the improved efficiency and productivity* that should be attainable under a properly organized postal system.

*Id., reprinted at* 3650–51 (emphasis added).

It thus appears that the intent of the PRA was to give the employees an opportunity to "make a difference" in the quality of the Postal Service and to profit from their own improved efficiency and productivity. It does *not* imply, as concluded by the Fifth Circuit, that:

> The solicitation of *suggestions to improve an agency's efficiency,* when a responding suggestion is accepted, *is the procurement of a service* within the meaning of the [CDA].

*Hayes,* 859 F.2d at 356 (emphasis added). An employee suggestion program is, by its own terms, designed to improve the efficiency of the agency. It is, then, directly related to the labor/management relationship existing between the agency and the employee.

The PRA was devised so that the Postal Service would maintain compensation and benefits for all employees on a standard comparable to the compensation and benefits paid in the private sector. 39 U.S.C. § 1003(a) (1982 & Supp. V 1987). Since the PRA was designed to bring postal labor relations within the same structure as the private sector, the PRA provided that the provisions of the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151 *et seq.* (1982 & Supp. V 1987), would apply, to the extent not inconsistent with the PRA, to the employee/management relations of the Postal Service. *Bacashihua v. Merit Systems Protection Bd.,* 811 F.2d 1498, 1501 (Fed. Cir.1987). *See also* 39 U.S.C. § 1209 (1982 & Supp. V 1987).

Pursuant to this scheme, postal employees, like private industry employees, may file any unfair labor practice charges with the National Labor Relations Board (NLRB). 39 U.S.C. §§ 1202–1209. In fact, the USPS is the only federal entity covered by the NLRA and subject to the jurisdiction of the NLRB. *Blaze v. Payne,* 819 F.2d 128, 130 (5th Cir.1987).

Although the PRA does not explicitly mention employee suggestion programs, such a program would clearly fall within the terms "compensation and benefits" as contained in 39 U.S.C. § 1003(a), entitled Employment Policy, since the mere existence of such a program infers that some type of compensation or benefit (whether monetary or public recognition) will be given to an employee for suggestions to improve the Postal Service. Under the PRA, all the terms and conditions of employment, including compensation and benefits, are to be determined by collective bargaining. This provision was explicitly understood as evidenced in the correspondence

attached to the legislative history. Specifically, these letters, in opposition to the bill, stated:

> [T]hat if the bill [the PRA] were enacted, all nonpreference-eligible employees would have all terms and conditions of their employment determined through collective bargaining * * *.

*Winston v. United States Postal Serv.*, 585 F.2d 198, 204 n. 20 (7th Cir.1978) (citing House Report at 67–70, 1970 U.S.Code Cong. & Admin.News at 3708–11). *See also Horner v. Schuck*, 843 F.2d 1368, 1372 (Fed.Cir.1988) (postal employees are bound by the terms and conditions of employment set forth in collective bargaining agreement negotiated pursuant to PRA).

At the time that Mr. Hayes submitted his suggestion, he was represented by the bargaining unit of the American Postal Workers Union, AFL–CIO (Union), and a collective bargaining agreement was in effect covering wages, hours, and conditions of employment for all the employees in the regular work force of the United States Postal Service. This agreement stated in Article 19 that:

> Those parts of all handbooks, manuals and published regulations of the Postal Service, that directly relate to wages, hours or working conditions, as they apply to employees covered by this Agreement, shall contain nothing that conflicts with this Agreement, * * *.

Agreement between USPS and American Postal Workers Union, AFL–CIO; and National Association of Letter Carriers, AFL–CIO, dated July 21, 1981, at 70–71. The USPS may make any changes relating to wages, hours, or working conditions, following notice to and consultation with the Union, that are fair, reasonable, and equitable, and are not inconsistent with the other terms of the bargaining agreement.

█ The USPS Employee Suggestion Program, as outlined in the Employee and Labor Relations Manual, the official policy document for the program, is part of the working conditions of Mr. Hayes' employment. Therefore, any claim that Mr. Hayes has against the USPS for noncompliance with the Employee Suggestion Program is a labor/management relations claim over which this Court has no jurisdiction.

In response to the plaintiff's argument that because the collective bargaining agreement does not specifically mention the Employee Suggestion Program, the suggestion program is not covered by the agreement, the Federal Labor Relations Authority has found that the establishment and staffing of a committee to design and administer a suggestion program directly concerns conditions of employment and is thus within the duty to bargain. *National Fed'n of Fed. Employees, Local 541*, 12 F.L.R.A. 270 (1983) (proposal of employer to establish committee to design and administer incentive awards program is within scope of bargaining with local union representing employees). *See also National Fed'n of Fed. Employees, Local 1579*, 12 F.L.R.A. 600 (1983) (proposal to require union representatives on incentive award committee and to require committee participation in suggestion program is negotiable as it directly concerns conditions of employment of bargaining unit members).

The term "working conditions" has been used synonymously with "conditions of employment" and has been defined to include such matters as training/apprentice programs, personnel, equipment, *incentive plans*, and improved facilities. *See Department of Navy Portsmouth Naval Shipyard*, Nos. 1–CA–70286, 1–CA–70298, slip op. at 20–23 (F.L.R.A. ALJ Dec. No. 73, July 15, 1988). Even the stated goals and objectives of the USPS Employee Suggestion Program are expressed using labor-employment terminology: "To improve employee morale and enhance job satisfaction * * * [t]o improve communications between employees and management, creating a spirit of teamwork * * * [t]o improve safety practices and enhance working conditions." USPS Employee and Labor Relations Manual, Part 633.2. Mr. Hayes was correct in his original complaint filed in the district court when he alleged that the suggestion program was a part of his employment contract with the USPS, and, as such, constitutes a labor/management claim.

Jurisdiction over labor/management claims does not exist within this Court, but rather in "any district court of the United States having jurisdiction of the parties." 39 U.S.C. § 1208(b) (1982 & Supp. V 1987). The United States Court of Appeals for the Federal Circuit in *Chin v. United States*, 890 F.2d 1143 (Fed.Cir.1989), was most adamant when it stated that the Claims Court lacks subject matter jurisdiction over labor contract claims of a postal employee, citing *Kellus v. United States*, 13 Cl.Ct. 538 (1987); *Jackson v. United States*, 10 Cl.Ct. 691 (1986); *McPherson v. United States*, 2 Cl.Ct. 670 (1983), and concluding that these Claims Court decisions are correct. *Chin*, 890 F.2d at 1146. The Federal Circuit noted that:

> In neither the PRA nor its legislative history is there any indication that Congress intended that claims based on Postal Service collective bargaining agreements may be brought in the Claims Court. Indeed, by specifying suit by Postal employees in district court, 39 U.S.C. § 1208 (1982), Congress could be said to intend to preclude suit in the Claims Court, particularly when it has generally not authorized litigation of government labor contract claims in the Claims Court, * * *. Accordingly, we conclude that the United States Claims Court lacks subject matter jurisdiction over PRA labor contract claims, * * *.

*Id. See generally Carter v. Gibbs*, No. 88–1576, slip op. at 16, 1990 WL 45554 (Fed.Cir. Mar. 30, 1990) (Civil Service Reform Act (CSRA) requires that federal employees subject to collective bargaining agreement negotiate with employing department or agency as CSRA is sole mecha-

nism for resolving labor conflicts in federal arena and the role of the judiciary is narrowly circumscribed); *Carr v. United States*, 864 F.2d 144, 147 (Fed.Cir.1989) (CSRA deprived Claims Court of jurisdiction to review plaintiff's removal from federal service); *Harris v. United States*, 841 F.2d 1097, 1100 (Fed.Cir.1988) (grievance procedures as adopted in collective bargaining agreement are exclusive remedy, therefore, the agreed procedure, arbitration, precludes other procedures, including those that resort to the Tucker Act).

■ Merely because the plaintiff submitted a suggestion in accordance with *The Employee Suggestion Program* handbook, in return for which he received a certificate and $104, he cannot construe such actions to become a procurement of services in order to invoke the contractual jurisdiction of the Claims Court. The contract liability, enforceable under the Tucker Act, does not extend to every agreement, understanding, or compact which can be semantically stated in terms of offer and acceptance or meeting of minds. *Kania v. United States*, 227 Ct.Cl. 458, 464, 650 F.2d 264, 268, *cert. denied*, 454 U.S. 895, 102 S.Ct. 393, 70 L.Ed.2d 210 (1981). Although a contract between the USPS and one of its employees is possible, it must be specifically spelled out as a contract. *Id.* at 465, 650 F.2d at 268. Mr. Hayes cannot escape his status as an employee of the USPS and then transform himself into an independent Government contractor negotiating with the USPS in an arm's length transaction so as to fall within the scope of the CDA.[1]

In transferring Mr. Hayes' claim to this Court, the Fifth Circuit noted that:

---

1. Even if the Fifth Circuit were somehow to be held correct that Mr. Hayes' employee suggestion to the USPS created an implied-in-fact contract giving jurisdiction to this Court under the authority of the CDA, the plaintiff's complaint would still have to be dismissed for lack of jurisdiction. This is so because the plaintiff has failed to present adequate evidence that he has submitted his written claim to a contracting officer and received a final decision on the claim. *Milmark Services, Inc. v. United States,* 231 Ct.Cl. 954, 956 (1982). No claim based upon a contract can be brought in this Court unless it has first been presented, in writing, to

a contracting officer and been the subject of a contracting officer's decision. 41 U.S.C. § 605 (1982 & Supp. V 1987); *Contract Cleaning Maintenance, Inc. v. United States,* 811 F.2d 586, 592 (Fed.Cir.1987); *Paragon Energy Corp. v. United States,* 227 Ct.Cl. 176, 192, 645 F.2d 966, 976 (1981); *Hoffman Constr. Co. v. United States,* 7 Cl.Ct. 518, 522 (1985). As this Court recently noted, the requirement for a claim and a contracting officer's decision applies with full force to implied contracts. *Acousti Eng'g Co. v. United States,* 15 Cl.Ct. 698, 700 (1988). Since these requirements have not been met, the complaint must be dismissed for lack of jurisdiction.

The Court of Claims has exercised jurisdiction in a number of suggestion box cases. *E.g. Griffin, supra; Shaller v. United States,* 202 Ct.Cl. 571, *cert. denied,* 414 U.S. 1092, 94 S.Ct. 723, 38 L.Ed.2d 549 (1973); *Serbin v. United States,* 168 Ct.Cl. 934 (1964); *Kempinski v. United States,* 164 Ct.Cl. 451, *cert. denied,* 377 U.S. 981, 84 S.Ct. 1889, 12 L.Ed.2d 749 (1964); *Martilla v. United States,* 118 Ct.Cl. 177 (1950).

*Hayes,* 859 F.2d at 357. All the cases cited, however, either do not concern the USPS or were decided prior to the PRA, which excluded the Postal Service from the provisions of 5 U.S.C. § 4503. *See e.g., Griffin,* 215 Ct.Cl. 710 (1978) (suggestion submitted to the United States Air Force pursuant to 10 U.S.C. § 1124); *Shaller,* 202 Ct.Cl. 571 (1973) (plaintiff refused to accept award tendered by Navy in accordance with 5 U.S.C. §§ 2121 *et seq.,* the predecessor statute to 5 U.S.C. §§ 4501 *et seq.);* *Serbin,* 168 Ct.Cl. 934 (1964) (plaintiffs' suit to recover incentive award under 5 U.S.C. §§ 2121 *et seq.* dismissed for failure to allege abuse of discretion by defendant's officers); *Kempinski,* 164 Ct.Cl. 451 (1964) (postal employee's claim for compensation for rejected suggestion dismissed because Government Employees Incentive Awards Act, 5 U.S.C. §§ 2121–2123 vests department head with discretion for payment); *Martilla,* 118 Ct.Cl. 177 (1950) (under Act of August 2, 1946 (5 U.S.C. § 116a), payment of cash awards to civilian employees is within discretion of department heads and if claim was fairly considered, although denied, there is no ground for suit).

Not only does this Court lack the requisite subject matter jurisdiction, but the plaintiff failed to follow the procedure for reevaluation as outlined in the USPS Employee Suggestion Program. Both the USPS Handbook EL–605, *The Employee Suggestion Program,* and the USPS Handbook EL–601, *Suggestion Program Administrator's Guide,* clearly state that action on an award is solely a management function and not subject to the formal grievance procedures. The existence of such a distinct statement that formal grievance procedures are not applicable in the reevaluation process indicates that the same grievance procedures that apply in all other disputes, differences, disagreements, or complaints related to wages, hours, and conditions of employment would have applied if the suggestion program had not been designated as an exclusive function of management.

The procedure set forth in the handbook for reevaluation provides that a request for reevaluation must be submitted within 15 calendar days of receipt of management's final decision. USPS Handbook EL–601, at 29. Thereafter, the Management Awards Review Committee reviews the reevaluation to insure that the additional facts presented by the suggester were considered by the evaluator. *Id.* All decisions relating to requests for reevaluations are final. *Id.*

Plaintiff has not indicated his compliance with this procedure, and even assuming his compliance, any decision rendered would be final. Mr. Hayes cannot ignore the appeal process that is explicitly described within the Employee Suggestion Program and then assume the guise of a Government contractor in order to get another bite at the apple. The plaintiff's suggestion does not constitute a procurement of services under the CDA, but rather is an employee/management issue, which is clearly beyond the jurisdictional bounds of this Court.

## CONCLUSION

For the reasons discussed herein, the defendant's Motion to Dismiss is granted, and the plaintiff's complaint is to be dismissed.

Each party is to bear its own costs.