Derrick CARRINGTON, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 11–769 C.

United States Court of Federal Claims.

July 31, 2012.

Donna M.B. King, Towson, MD, for plaintiff.

Courtney S. McNamara, United States Department of Justice, with whom were Stuart F. Delery, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director, Washington, DC, for defendant.

## OPINION

BUSH, Judge.

Before the court are the government's motion to dismiss this suit and plaintiff Derrick Carrington's motions to amend the complaint and to transfer this action to the United States District Court for the District of Columbia.[1] The court concludes that it lacks

---

1. In a separate order issued on this date, the court deemed plaintiff's reply brief to include Plaintiff's Motion for Leave to File Second Amended Complaint. In this opinion, citations

subject matter jurisdiction over the claims raised in the second amended complaint; it further holds, however, that the transfer of those claims to the district court would be in the interest of justice. As discussed below, Mr. Carrington's motions are granted, and the government's motion to dismiss this action is denied as moot.

## BACKGROUND [2]

### I. Factual Background

Mr. Carrington was employed by the United States Postal Service (USPS) at one of its postal facilities in the District of Columbia until December 22, 2009. 2d Am. Compl. ¶ 2. On that date, plaintiff received a removal letter from the USPS, terminating his employment for poor attendance. *Id.* ¶ 3. About one week later, plaintiff provided a copy of the removal letter to a representative of his union, the National Association of Letter Carriers, AFL–CIO (hereinafter NALC or Union). *Id.* ¶ 4.

On August 19, 2010, representatives of the USPS and NALC entered into a settlement agreement, under which Mr. Carrington would be allowed to return to work two days later. *Id.* ¶¶ 5–6. When Mr. Carrington returned to work on the appointed date, however, he was informed that the settlement agreement was procedurally improper and that he would not be permitted to resume his duties. *Id.* ¶ 6. Not until almost a year later did Mr. Carrington learn that NALC had not filed a timely appeal of his termination. *Id.* ¶ 8.

On May 24, 2011, an arbitrator determined that the USPS representatives who had entered into the settlement agreement with NALC were not authorized to do so because the Union had not in fact submitted a formal grievance to the USPS on behalf of plaintiff. *Id.; see* Def.'s Mot. Ex. C. The arbitrator therefore denied the grievance, and Mr. Carrington received neither reinstatement nor back pay. Plaintiff asserts that he has "gone through any required union grievance proce-

dures prior to filing suit [and that his] suit is timely filed." 2d Am. Compl. ¶ 9.

### II. Procedural History

Mr. Carrington filed his original three-count complaint in this case on November 14, 2011, naming both the United States and NALC as defendants. In the first count of the original complaint, plaintiff sought damages from the Union for the alleged breach of its duty to fairly represent him in his dealings with the USPS. In the second count, Mr. Carrington sought unpaid wages and benefits from the United States under the Back Pay Act, 5 U.S.C. § 5596 (2006). Finally, in the third count of the original complaint, Mr. Carrington sought damages from the government for its alleged "breach of the Settlement Agreement and Plaintiff's employment with the USPS." Compl. ¶¶ 23–24.

The government filed Defendant's Motion to Dismiss (Def.'s Mot.) on February 13, 2012. Plaintiff then filed a number of documents, including: (1) Plaintiff's Opposition to Motion to Dismiss, filed March 12, 2012; (2) Plaintiff's Motion to Transfer Action, filed March 12, 2012; (3) an Amended Complaint, filed March 12, 2012; and, (4) Plaintiff's Motion for Leave to File Amended Complaint, filed March 19, 2012. The government filed Defendant's Reply in Support of Motion to Dismiss and Response to Motions for Leave to Amend and to Transfer (Def.'s Reply) on April 5, 2012. Plaintiff filed his Reply in Further Support of His Motion for Transfer and Motion for Leave to File Amended Complaint (Pl.'s Reply) on April 20, 2012, to which was attached the Second Amended Complaint (Am. Compl.).

In an accompanying order filed this date, the court clarified the status of the parties' motions. The Clerk's Office was directed to strike plaintiff's first amended complaint; plaintiff's motion for leave to file the first amended complaint was denied as moot; and the court also deemed plaintiff's reply brief, filed April 20, 2012, to include Plaintiff's Mo-

---

to the original complaint are designated "Compl."; citations to the second amended complaint are designated "2d Am. Compl."

2. The facts recounted here are taken from the parties' submissions and are undisputed for the purpose of deciding the pending motions, unless otherwise noted. The court makes no findings of fact in this opinion.

tion for Leave to File Second Amended Complaint. The court notes that virtually all of parties' arguments regarding dismissal and transfer apply with equal force to the original complaint and the second amended complaint.

In the second amended complaint, the first two counts are unchanged from the original complaint. In the third and fourth counts of the second amended complaint, however, plaintiff has clarified the original breach of contract claim by dividing it into two claims—one for breach by the United States of the settlement agreement, and one for breach by the United States of its collective bargaining agreement (CBA) with the Union. Plaintiff seeks $150,000 in damages for each of the four counts in the second amended complaint.

The government's motion to dismiss raises several jurisdictional challenges to the claims presented in the original complaint (and in the second amended complaint).[3] Most importantly, defendant argues that all of the claims set forth in the complaint—whether directed at the United States or NALC—are based upon breach, by the Union, of its duty to fairly represent plaintiff, and breach of contract by the United States. According to the government, such "hybrid" labor-management employment claims may only be raised in the district courts. Def.'s Mot. at 6–8. Plaintiff concedes that this court lacks jurisdiction over his claims and requests transfer of his second amended complaint to the appropriate district court. The court reserves further discussion of the parties' motions for the analysis section of this opinion.

## DISCUSSION

### I. Standards of Review

#### A. Motion to Dismiss for Lack of Jurisdiction

■ In rendering a decision on a motion to dismiss for lack of subject matter jurisdic-

tion pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), this court must presume all undisputed factual allegations to be true and must construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *abrogated on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800, 814–15, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988). The relevant issue in a motion to dismiss under RCFC 12(b)(1) " 'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Patton v. United States,* 64 Fed.Cl. 768, 773 (2005) (quoting *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683). The plaintiff bears the burden of establishing subject matter jurisdiction, *Alder Terrace, Inc. v. United States,* 161 F.3d 1372, 1377 (Fed.Cir.1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)), and must do so by a preponderance of the evidence, *Reynolds,* 846 F.2d at 748 (citations omitted).

■ The court may look at evidence outside of the pleadings in order to determine its jurisdiction over a case. *Martinez v. United States,* 48 Fed.Cl. 851, 857 (2001) (citing *RHI Holdings, Inc. v. United States,* 142 F.3d 1459, 1461–62 (Fed.Cir.1998); *Rocovich v. United States,* 933 F.2d 991, 993 (Fed.Cir.1991)), *aff'd in relevant part,* 281 F.3d 1376 (Fed.Cir.2002). "Indeed, the court may, and often must, find facts on its own." *Id.* If jurisdiction is found to be lacking, this court must dismiss the action. RCFC 12(h)(3).

#### B. Motion for Leave to Amend the Complaint

■ Amendment of pleadings is governed by RCFC 15. Amendment as a matter of course is governed by RCFC 15(a)(1), which imposes certain timeliness restrictions.

---

**3.** Defendant's motion raises multiple jurisdictional challenges to the complaint, and, in the alternative, presents arguments that plaintiff's complaint suffers from a failure to state a claim upon which relief may be granted. Because one of

defendant's jurisdictional arguments is sufficient to require transfer of Mr. Carrington's suit to the district court, this court need not address defendant's alternative arguments.

If those timeliness restrictions are not met, "[t]he court should freely give leave [to amend the complaint] when justice so requires." RCFC 15(a)(2). *Id.* As the United States Court of Appeals for the Federal Circuit has stated,

> It is well established that the grant or denial of an opportunity to amend pleadings is within the discretion of the trial court. Although, in the context of Rule 15(a), that discretion should be exercised liberally to permit such amendments, the existence of such factors as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment" may justify the denial of a motion for leave to amend.

*Mitsui Foods, Inc. v. United States,* 867 F.2d 1401, 1403–04 (Fed.Cir.1989) (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

### C. Motion to Transfer

 Transfer of cases from this court to a district court is governed by 28 U.S.C. § 1631 (2006), which states in relevant part that

> Whenever a civil action is filed in [this] court ... and [this] court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

*Id.* "Transfer is appropriate when three elements are met: (1) The transferring court lacks subject matter jurisdiction; (2) the case could have been filed in the court receiving the transfer; and (3) the transfer is in the interests of justice." *Brown v. United*

*States,* 74 Fed.Cl. 546, 550 (2006) (citing 28 U.S.C. § 1631). One compelling reason for transfer is when a statute of limitations would possibly bar a newly filed claim in a district court that would otherwise, if transferred pursuant to section 1631, be considered to have been timely filed as of the date of its original filing in this court. *Texas Peanut Farmers v. United States,* 409 F.3d 1370, 1374 (Fed.Cir.2005) (citation omitted).

### II. Analysis

 As a threshold matter, the court grants plaintiff's motion for leave to file the second amended complaint. The only argument defendant raises in opposition to plaintiff's request is that the court "cannot continue to entertain Mr. Carrington's case" because it lacks jurisdiction over Mr. Carrington's claims. Def.'s Reply at 2. The court believes, however, that plaintiff should be able to refine his claims as a preliminary step in the court's resolution of defendant's jurisdictional challenge to the complaint, particularly where, as here, plaintiff concedes that jurisdiction is lacking in this court and seeks transfer of his claims to the district court.[4] Thus, it is plaintiff's second amended complaint, not the original complaint, that must be examined to determine whether this court possesses jurisdiction over any of plaintiff's claims.

### A. No Jurisdiction in this Court for Plaintiff's Suit

The court begins with an overview of the operative facts pertinent to plaintiff's claims. Mr. Carrington was terminated by the USPS and attempted to grieve that termination through NALC, but the Union did not file a timely appeal of his termination. Several months later, a grievance committee composed of management and representatives of the Union reached a settlement concerning Mr. Carrington's termination, but that settlement agreement was renounced by the USPS as invalid. Ultimately, arbitration resulted in a final rejection of Mr. Carrington's requests for reinstatement and back pay, with

---

4. The court notes that defendant did not argue that plaintiff's proposed amendment of the com-

plaint is futile.

the arbitrator concluding that there was no valid settlement agreement.

■ The fundamental elements of plaintiff's claims are that the Union failed in its duty to fairly represent him, and that the USPS breached both the settlement agreement as well as NALC's CBA. As plaintiff has belatedly recognized, this court is not the proper forum for Mr. Carrington's claims because Congress conferred jurisdiction over this type of dispute to the district courts when it enacted the Postal Reorganization Act (PRA), Pub.L. 91–375, 84 Stat. 719, codified at 39 U.S.C. § 101 *et seq.* (2006). *See Chin v. United States,* 890 F.2d 1143, 1146 (Fed.Cir.1989) (stating that "Congress expressly permitted employees to sue the Postal Service in federal district court for claims based upon the union contract when the union is alleged to have failed to protect the employee's rights" (citing 39 U.S.C. § 1208; *Trent v. Bolger,* 837 F.2d 657, 657–59 (4th Cir.1988))). Thus, binding precedent holds that claims such as those set forth in Mr. Carrington's lawsuit cannot be brought in this court. *See id.* (concluding that the "United States [Court of Federal Claims] lacks subject matter jurisdiction over PRA labor contract claims"). This court lacks jurisdiction over plaintiff's "hybrid" suit.[5]

■ Even if plaintiff's breach of contract claims, presented in the third and fourth counts of the second amended complaint, could be considered to be stand-alone claims and not part and parcel of a hybrid suit as *Chin* instructs, these breach of contract claims are not within this court's jurisdiction.[6] In the fourth count of the second amended complaint, Mr. Carrington specifically invokes the collective bargaining agreement of the Union, asserting that the CBA contains contractual rights of which he is "an intended beneficiary." Am. Compl. ¶ 29. Although this court has jurisdiction over many contract claims against the United States, 28 U.S.C. § 1491(a)(1) (2006), the Federal Circuit has ruled that federal employees who claim to be the third-party beneficiaries of a CBA may not bring breach of employment contract claims in this court. *See Todd v. United States,* 386 F.3d 1091, 1094 (Fed.Cir. 2004). Relying in part on *Chin,* the Federal Circuit held that the grievance procedures outlined in a collective bargaining agreement were exclusive and that these grievance procedures displaced any breach of contract remedies that might otherwise be available to third-party beneficiaries of a CBA in this court. *Id.*

■ inasmuch as plaintiff availed himself of the grievance procedures set forth in the Union's CBA, *Todd* does not permit him to bring a breach of contract claim in this court for exactly the same relief he previously sought through the grievance process. Further, *Chin* holds that union member postal employees, such as Mr. Carrington, cannot enforce CBA or other employment contract rights in the Court of Federal Claims, because the PRA and other principles of federal employment law do not provide these postal workers with contract rights enforceable in this court. *See Chin,* 890 F.2d at 1146 ("In neither the PRA nor its legislative history is there any indication that Congress intended that claims based on Postal Service collective bargaining agreements may be brought in the Claims Court."). Thus, plaintiff's breach of the CBA claim is not within the jurisdiction of this court.

---

**5.** Mr. Carrington's type of lawsuit is frequently referred to as a "hybrid" suit, where a union is alleged to have failed in its duty to represent the plaintiff, and the United States is alleged to have breached the terms of the collective bargaining agreement with that union. *E.g., Miller v. U.S. Postal Serv.,* 985 F.2d 9, 10 (1st Cir.1993) (citing *Reed v. United Transp. Union,* 488 U.S. 319, 327, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989)).

**6.** In *Chin,* the Federal Circuit held that a union member postal employee could not repackage a claim based on rights protected by his union's

CBA as an individual, "general" contract claim, because such claims are governed by the PRA and its exclusive scheme for resolving employment claims. *See* 890 F.2d at 1145–46 (stating that the plaintiff in that case had "merely mischaracterized as a 'general' contract claim[] a collective bargaining agreement claim, which is governed exclusively by mandatory grievance procedures in the collective bargaining agreement and which, therefore, is subject to judicial review only as provided by the PRA," in the district courts).

■ Next, turning to plaintiff's breach of the settlement agreement claim, presented in the third count of the second amended complaint, this court has consistently held that the employment contract rights of union member postal employees may not be vindicated in this court. One line of cases addresses "suggestion box" claims, where the postal employee plaintiff has alleged that a contract between the USPS and that employee was breached when the USPS failed to compensate the employee for a valuable idea placed in a suggestion box. *See, e.g., Hayes v. United States,* 20 Cl.Ct. 150 (1990), *aff'd on other grounds,* 928 F.2d 411 (Fed.Cir.1991). This court in *Hayes* concluded that the PRA displaced the Court of Federal Claims' power to enforce an alleged contract between a union employee and the USPS. *See* 20 Cl.Ct. at 155–56 (rejecting the assertion that a separate, individual employment contract between the plaintiff and the USPS could be enforced in this court, because any suggestion box claim was, pursuant to the PRA, a labor-management claim not within this court's jurisdiction (citing *Chin,* 890 F.2d at 1146)); *see also Rinner v. United States,* 50 Fed.Cl. 333, 336 (2001) (relying on the PRA, *Chin* and *Hayes* to reach the same conclusion).

In another suit filed in this court, a postal employee sought to enforce an arbitration award obtained by her union after she and several of her co-workers initiated grievance procedures provided by a CBA. *Andres v. United States,* No. 03–2654, 2005 WL 6112616 (Fed.Cl. July 28, 2005). This court held that pursuant to a provision of the PRA, the plaintiff's breach of contract claim belonged in the appropriate district court, not this court. *See id.* at *4 (stating that "suits brought by a postal employee to enforce a favorable arbitration award must be brought in a district court," because such claims

founded on the breach of grievance rights contained in a CBA must be brought in a district court under 39 U.S.C. § 1208). As the cases discussed here demonstrate, a claim for breach of an alleged employment contract between a union member postal employee and the USPS may not proceed in this court, because this type of claim is governed by the union member's collective bargaining agreement and the PRA, which vests exclusive jurisdiction for such claims in the district courts.[7]

Here, the settlement agreement was the product of the grievance procedures set forth in the Union's CBA and was signed not by Mr. Carrington but by representatives of the USPS and NALC. Def.'s Mot. Ex. A. The settlement agreement was then reviewed in arbitration where the Union and the USPS, not Mr. Carrington, were the parties. *Id.* Ex. C. The contract provision governing the arbitrator's decision to invalidate the settlement agreement was Article 15 of NALC's collective bargaining agreement. *See id.* at 1. Plaintiff's breach of the settlement agreement claim is a labor-management claim governed by NALC's collective bargaining agreement and the PRA, and therefore is not cognizable in this court. *See Chin,* 890 F.2d at 1145–46 (stating that the plaintiff in that case had "merely mischaracterized as a 'general' contract claim[ ] a collective bargaining agreement claim, which is governed exclusively by mandatory grievance procedures in the collective bargaining agreement and which, therefore, is subject to judicial review only as provided by the PRA," in the district courts).

**B. Transfer of Plaintiff's Claims Is Warranted**

■ The court has found that it lacks jurisdiction over plaintiff's claims.[8] Thus,

---

7. Defendant fleetingly discusses the Merit Systems Protection Board (MSPB) as a potential forum for Mr. Carrington's wrongful termination claim, Def.'s Mot. at 8, but the parties have not stated whether, in the circumstances of this case, plaintiff would have recourse to the MSPB to contest his removal from the USPS. It is not clear from the facts alleged in the complaint whether Mr. Carrington would have the right to appeal his removal to the MSPB. *See McCandless v. Merit Systems Protection Bd.,* 996 F.2d 1193,

1196 (Fed.Cir.1993) (discussing the statutory framework which gives some but not all postal employees the right to appeal adverse personnel actions to the MSPB). In any case, such a question is irrelevant to plaintiff's motion to transfer his suit to the district court.

8. Defendant raises other jurisdictional challenges to specific counts of the complaint, asserting, for example, that NALC is not a proper defendant in this court, depriving this court of jurisdiction

the first condition of the transfer statute, 28 U.S.C. § 1631, has been met. It is clear, as discussed *supra*, that Mr. Carrington's "hybrid" suit against the USPS could have been brought in a district court, in this case the United States District Court for the District of Columbia. The court therefore finds that the second condition of the transfer statute has been met. The court also finds that it is in the interest of justice to transfer this suit, so that plaintiff's suit may, perhaps, be found to have been timely filed for purposes of the D.C. district court.[9]

## CONCLUSION

The court has found that there is no jurisdictional basis in this court for any of the claims raised by plaintiff. The court further holds, however, that the claims set forth in the second amended complaint should be transferred to a district court in the interest of justice.

Accordingly, it is hereby **ORDERED** that

(1) Defendant's Motion to Dismiss, filed February 13, 2012, is **DENIED** as moot;

(2) Plaintiff's Motion for Leave to File Second Amended Complaint, filed April 20, 2012, is **GRANTED,** and the Clerk's Office is directed to **FILE** the **Second Amended Complaint** [docket no. 18–1] as a separate document on the docket as of the date of this opinion;

(3) Plaintiff's Motion to Transfer Action, filed March 12, 2012, is **GRANTED**;

(4) The Clerk's Office is directed to **TRANSFER** the Second Amended Complaint to the United States District Court for the District of Columbia; and

(5) No costs.

---

over the first count of the second amended complaint. Def.'s Mot. at 9. The government also argues that plaintiff has failed to establish this court's jurisdiction over the second count of the second amended complaint, because no money-mandating statute has been identified to support plaintiff's Back Pay Act claim. *Id.* at 10. The court notes that several of defendant's arguments have merit, but concludes that further discussion of defendant's jurisdictional challenges is unnecessary in light of the holding of *Chin* that prevents this court from addressing plaintiff's hybrid suit.

9. The parties dispute the accrual date of plaintiff's claims. *See* Def.'s Reply at 2–4; Pl.'s Reply at 1–4. The court notes the dispute, and defers to the transferee court as to the determination of whether plaintiff has filed a timely hybrid suit. *Cf. Simmons v. Howard Univ.*, 157 F.3d 914, 916 (D.C.Cir.1998) (noting that the "application of [the limitations period to hybrid claims] often leads to fact-intensive disputes not amenable to resolution through summary judgment").