**Calvin J. WEBER, Petitioner,**

v.

**DEPARTMENT OF the ARMY, Respondent.**

No. 93–3260.

United States Court of Appeals, Federal Circuit.

Oct. 18, 1993.

---

Calvin J. Weber, pro se.

Matthew S. Bode, Atty., Commercial Litigation Branch, Dept. of Justice, of Washington, DC, submitted for respondent. With him on the brief were Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director and Anthony H. Anikeeff, Asst. Director.

Before NEWMAN and PLAGER, Circuit Judges, and RONEY*, Circuit Judge.

PER CURIAM.

Mr. Weber appeals the final decision[1] of the Merit Systems Protection Board (Board), Dkt. No. SL1221920395W1, dismissing his appeal to the Board for lack of jurisdiction, 56 M.S.P.R. 361. We *affirm.*

## BACKGROUND

Calvin J. Weber is an engineer, employed by the Army Acquisition Executive Support Agency since 1987. Weber complains that the Army's selection of others' engineering proposals, rather than his proposals, is wrongful. Mr. Weber wishes to use procedures established under the Civil Service Re-

---

* Honorable Paul H. Roney, Senior Circuit Judge, Eleventh Circuit, sitting by designation.

1. The Administrative Judge (AJ) issued an initial decision on October 14, 1992. That decision became final on February 12, 1993, when the Board denied Weber's petition for review.

form Act (CSRA) and the Whistleblower Protection Act (WPA)[2] to pursue this claim.

On March 28, 1989, Weber submitted a proposal to the United States Army Aviation Systems Command (AVSCOM). AVSCOM maintains a program, called Value Engineering, designed to reduce the cost of Army operations through engineering improvements. Weber's proposal was intended to save money on the maintenance of Cobra helicopters. The proposal was studied, and on August 22, 1989, was assigned the status of a "Value Engineering Proposal," and named VA89–0158 (VEP). In September, the VEP was forwarded to AVSCOM's Configuration/Specification and Data Management Branch for further review. In October of 1989, the VEP was returned to AVSCOM's value engineering office without taking further action, because the Army had recently adopted a substantially identical proposal. This proposal, VA89–5014, had been submitted by a civilian contractor, Hayes Targets, on May 18, 1989, approximately a month and a half after the VEP was submitted, and had been accepted by the Army on July 13, 1989. Consequently, the VEP was deactivated, that is, Weber's proposal was rejected. Mr. Weber claims that he was not notified of the rejection of his proposal. The Army does not deny this, nor does the Army seem certain of precisely when it rejected the VEP.

Weber sought corrective action with the Office of Special Counsel (OSC) on May 9, 1992. He contended that the Army engaged in a prohibited personnel practice in rejecting his VEP proposal. Substantively, Weber argued that consideration of the substantially identical proposal submitted by Hayes Targets before considering his VEP was unfair. Weber also claimed that the Army had violated the regulations of the Value Engineering Program by failing to notify him of the rejection of his VEP, and by failing to test the accuracy of the savings claimed for value engineering proposals. Regarding jurisdic-tion, Weber contended that Army acceptance of a VEP was equivalent to an award, and therefore was a personnel action within the meaning of 5 U.S.C. § 2302(a)(2). Moreover, Weber claimed that, by unfairly processing the VEP, the Army had engaged in a prohibited personnel practice, and thereby violated the merit system principles.

In its June 1992 (precise date unclear) letter to Weber, the OSC declared that it found no evidence of any prohibited personnel practice or other violation sufficient to warrant further action, but that its letter should not be considered an adjudication of any sort. In August, Weber filed an individual right of action (IRA) appeal with the Board. In October, the AJ dismissed the IRA appeal for lack of jurisdiction. That decision became final when the Board denied Weber's petition for review.

### DISCUSSION

■ Given the limited jurisdiction granted to the Board by the Civil Service Reform Act and the Whistleblower Protection Act, we see no way in which Weber can be heard by the Board. Title 5 U.S.C. § 1221[3] establishes the jurisdiction of the Board for IRA cases. The statute provides that an employee may, with respect to any "personnel action" taken against him, as a result of a "prohibited personnel practice described in section 2302(b)(8),"[4] seek corrective action from the Board. In the case below, the Board held that the Army had taken no "personnel action" against Weber. We affirm, and moreover hold that the actions the Army has taken do not constitute a "prohibited personnel practice described in section 2302(b)(8)."

Section 2302(a)(2)(A) in relevant part defines a "personnel action" as "a decision concerning pay, benefits, or awards, or concerning education or training if the education or training may reasonably be expected to lead to an appointment...." Weber contends

**2.** Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.) and the Whistleblower Protection Act of 1989, Pub.L. No. 101–12, 103 Stat. 16, also codified in scattered sections of 5 U.S.C. Unless otherwise noted, citation is to U.S.C. (1988).

**3.** Supp. I 1989.

**4.** Supp. I 1989.

that refusal to accept a proposal for improvement of the Army's helicopter maintenance was a personnel action concerning an "award" within the meaning of § 2302(a)(2)(A), and is therefore appealable. In support of this contention, Weber points to the incentive system that rewards the acceptance of value engineering proposals, and notes that professional prestige accrues to those who submit successful proposals. The Board flatly disagreed with the proposition that acceptance of an employee proposal fell within the meaning of "award," and hence within the meaning of "personnel action" as intended by the statute. On reading § 2302(a)(2)(A), AJ Salyer ruled "that this list simply does not include the action of an agency in refusing to accept an employee suggestion." [5]

■ The primary purpose of an award is to recognize the merits of the recipient in the eyes of the awarding body. In the context of this statute, awards are one way in which agencies affect employee relations, that is, relate to their personnel. Awards are, consequently, personnel actions. The statute prohibits awards from being used to affect improperly the relations between agencies and their employees. The primary purpose of accepting a proposal for improvement of an agency, in contrast, is improvement of the agency's service. Proposals for improvement are ultimately intended to affect the agency's relations, not with its employees, but with those it serves.

It is true that the acceptance of an employee suggestion may result in *recognition for* the employee, but that does not mean that the agency accepted the proposal in order to recognize the employee. It is also true that the agency may provide financial incentives for the submission of proposals, but that does not mean that the agency's purpose was the remuneration of an employee for services rendered, or that an employee who fails to receive an award is the victim of a "personnel action". Because the Army took no "personnel action" with regard to Weber, the Board does not have jurisdiction over Weber's claim.

Regarding the "prohibited personnel practice" required by § 1221, Weber argues that he has a cause of action as a "whistleblower" under the Whistleblower Protection Act of 1989. Title 5 U.S.C. § 2302(b)(11) mandates that any federal employee with authority to take personnel actions shall not "take or fail to take any other personnel action if the taking of or failure to take such action violates any law, rule or regulation implementing, or directly concerning, the merit system principles contained in § 2301 of this title." Weber argues that merit system principles, e.g. the "fair and equitable treatment" of 5 U.S.C. § 2301(b)(2), are violated by the manner in which his proposal was rejected by the Army. But even assuming, *arguendo*, that his claim under § 2302(b)(11) is valid, § 1221(a)(2), quoted above, gives the Board subject-matter jurisdiction *only* on claims brought under § 2302(b)(8). *Spruill v. M.S.P.B.*, 978 F.2d 679, 690 (Fed.Cir.1992).

■ This leaves open the question of whether or not Weber has a claim under § 2302(b)(8), and erroneously discussed it in terms of § 2302(b)(11), more than understandable in a *pro se* proceeding such as this one. Section 2302(b)(8) establishes a cause of action for those who suffer personnel actions as a consequence of their whistleblowing activities. The statute makes it a "prohibited personnel practice" for any federal employee to take personnel actions because of disclosure of information by an employee who reasonably believes that government action violates a law, rule or regulation, or is an example of gross mismanagement. Essentially, those in authority may not punish or deter those in their power from making embarrassing information public.

■ Weber argues that the Army violation of its regulations regarding notice and validation of cost-saving claims is a violation of federal regulation, and his complaint therefore a disclosure, of the sort § 2302(b)(8) was intended to protect, and therefore the Board has jurisdiction over his claim. In its letter, the OSC disagreed. We see no reason to reach the issue of whether or not the Army's

---

**5.** *Weber v. Department of the Army,* Initial Decision, M.S.P.B. St. Louis Regional Office, Docket Number SL1221920395W1, October 14, 1992, p. 3.

alleged violation of its VE guidelines can constitute the substance of a whistleblowing claim under § 2302(b)(8)(A)(i). Section 2302(b)(8) bars a specific government action, *viz.* adverse personnel actions taken in response to whistleblowing activity. The Army simply has not taken a "prohibited personnel action," that is, has not responded to Weber's alleged whistleblowing activity. Weber himself has explicitly maintained that cancellation of his proposal was not a reaction to his whistleblowing activity.[6] So even if Weber has "blown the whistle" on some Army activity, he has no grievance under § 2302(b)(8). Therefore the Board has no jurisdiction.

■ The Whistleblower Protection Act protects government employees from being punished for disclosing potentially embarrassing information about the operation of government. *See Marano v. Dept. of Justice,* 2 F.3d 1137 (Fed.Cir.1993). In general,

the WPA does not give the Board the right to review the substance of whistleblowing claims. The Board can only review the grievances of Federal employees; it is not in charge of making sure government runs properly. As it recognized in its final decision, the Board does not have jurisdiction to hear the complaints Weber wishes to make.

### CONCLUSION

For all the foregoing reasons, the decision of the Board is

### *AFFIRMED.*

---

**6.** "The Board's Initial Decision stated that I submitted a "whistleblowing claim." In my complaint to the OSC I did *not* claim retaliation for whistleblowing...." *Weber v. Army,* 93–3260, Attachment to the Informal Brief (Form 9).