**John RIDENOUR, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 97–816C.**

United States Court of Federal Claims.

June 15, 1999.

Anthony William Tauke, Porter, Tauke & Ebke, Council Bluffs, Iowa, for plaintiff.

Domenique Kirchner, with whom were Acting Assistant Attorney General David W. Ogden, Director David M. Cohen, and Assistant Director Kirk T. Manhardt, Civil Division, Department of Justice, Washington, D.C., and Lyman Goon, Social Security Administration, for defendant.

## OPINION

WIESE, Judge.

Plaintiff is an employee of the United States Social Security Administration. On a number of past occasions, plaintiff, acting pursuant to that agency's "Employee Suggestion Program," submitted proposals suggesting changes in administrative procedures relating to the processing of social security claims. Upon evaluation, the agency accepted these suggestions and, as authorized by the suggestion program, made cash awards to plaintiff, of varying amounts, measured against the estimated savings effected by the changes in procedure. The basis of plaintiff's complaint is that the agency miscalculated the savings attributable to his suggestions and, hence, failed to award him the amount called for by the suggestion program. The complaint seeks payment of an additional $84,000.

The Government has moved to dismiss the suit for lack of jurisdiction. Alternatively, the Government asks that we enter summary judgement in its favor on the ground that the facts hold out no basis for relief as a matter of law. The issues have been fully briefed by the parties and oral argument was heard on June 8, 1999. We conclude that the case is within our jurisdiction and presents a bonafide dispute as to which further proceedings will be required. The Government's motions are therefore denied.

## FACTS

For the purpose of addressing the issues presented by the Government's motions, only a few background facts are necessary. Plaintiff, as we have already indicated, is an employee of the Social Security Administration (SSA or the agency). He holds a supervisory position with that agency and is assigned to its field office in Council Bluffs, Iowa.

At various times between 1985 and 1996, plaintiff submitted suggestions for improvements in operational procedures under the agency's employee suggestion system. That system, formally referred to as the Employee Suggestion Program (the program), is part of the Incentive Awards Program established by the Government Employees Incentive Awards Act of September 1, 1954, 5 U.S.C. §§ 2121–23 (1964) (current version at 5 U.S.C. §§ 4501–23 & Supp. III 1997). The purpose of the program is to encourage employees to submit suggestions for "improving the efficiency, effectiveness, and economy of the Government." 5 C.F.R. § 451.102 (1999). To further that end, agencies are authorized to grant monetary, honorary, or informal recognition awards to employees whose suggestions have been accepted and put into use. The details of the program, including the guidelines for award, are set out in the SSA Personnel Manual for Supervisors, ch. S451–3 (the manual).[1]

Four of plaintiff's accepted suggestions form the basis of his action in this court. In each instance, the gist of his grievance is that the agency failed to honor the dictates of its manual by failing to calculate correctly the savings achieved by the Government through

---

1. During the time frame at issue—1985–1996—the agency operated under one of two versions of the manual. The first, Social Security Admin., Dep't of Health and Human Services, Personnel Manual for Supervisors—SSA, General Series, ch. S451, subchapter 3 (June 28, 1985), was in force through August 21, 1994; the second, Social Security Admin., Dep't of Health and Human Services, SSA Personnel Manual for Supervisors, General Series, ch. S451, subchapter 3 (August 22, 1994), since that date. Except for minor differences in calculating award amounts, the two versions are identical.

the use of his suggestions, thereby diminishing the amount of the award he properly was due. Plaintiff maintains that the acceptance of his suggestions gave rise to implied-in-fact contracts and that the agency's alleged departure from the award guidelines amounts to a breach of those contracts.

Defendant seeks dismissal of the suit based on this court's claimed lack of jurisdiction over the subject matter and on plaintiff's alleged failure to state an enforceable right to monetary relief. We examine defendant's arguments below.

## DISCUSSION

*The Jurisdictional Issue*

■ We begin our discussion with defendant's contention that this court does not have jurisdiction to hear plaintiff's suit. The argument starts with the rule, first expressed in *United States v. Fausto*, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), that, with respect to personnel matters affecting the federal employment relationship that are addressed in the Civil Service Reform Act of 1978 (CSRA or the Act), Pub.L. No. 95–454, 82 Stat. 1111 *et seq.* (codified, as amended, in various sections of 5 U.S.C. (1994 ed. and Supp. III 1997)), the mechanisms for relief established by that Act provide the concerned employee's only remedies. "[U]nder the comprehensive and integrated review scheme of the CSRA, the Claims Court [now Court of Federal Claims] (and any other court relying on Tucker Act jurisdiction) is not an 'appropriate authority' to review an agency personnel determination." *Fausto*, 484 U.S. at 454, 108 S.Ct. 668.

Proceeding with this thought, defendant points to the Act's list of prohibited personnel practices which includes, *inter alia*, any arbitrary action by supervisory officials in respect to "a decision concerning [an employee's] pay, benefits, or awards." 5 U.S.C. § 2302(a)(2)(A)(ix). Since this case concerns a decision regarding an award, defendant argues that the claim amounts to an allegation involving a prohibited personnel practice, the investigation and resolution of which falls—as specified by 5 U.S.C. § 1214 (1994)—exclusively under the aegis of the Office of Special Counsel.

By way of confirmation of these views, we are referred to the decision in *Weber v. Department of the Army*, 9 F.3d 97 (Fed.Cir. 1993) in which the court, explicitly stated that "[a]wards are ... personnel actions." *Id.* at 100. That characterization, taken together with the exclusiveness of the Civil Service Reform Act relief, leads defendant to conclude that plaintiff has no remedy in this court.

We disagree with defendant's argument. As we see it, defendant repeats here the same analytical error that was committed by the claimant in *Weber*—the failure to distinguish between awards that are management-initiated (and geared to the employee's job performance) and awards that begin with the voluntary actions of an employee addressing concerns beyond the scope of the employee's official duties.

To explain further: the plaintiff in *Weber* was a civilian employee of the Army Executive Support Agency who had submitted a value engineering proposal aimed at reducing helicopter maintenance costs. The proposal was not accepted. Weber challenged this action before the Office of Special Counsel, claiming that a decision on a value engineering change proposal was equivalent to a decision on an award and that, in unfairly rejecting his proposal (his allegation), the Army had committed a prohibited personnel practice.

The Office of Special Counsel rejected the claim because it found no evidence of a prohibited personnel practice. Thereafter, plaintiff appealed to the Merit Systems Protection Board (MSPB or board). This appeal, however, was unsuccessful. In the board's view, a decision on an award within the meaning of 5 U.S.C. § 2302(a)(2)(A) "simply does not include the action of an agency in refusing to accept an employee suggestion." *Weber v. Department of the Army*, Initial Decision, M.S.P.B. St. Louis Regional Office, Docket Number SL1221920395W1, October 14, 1992, at 3.

The issue eventually came before the Court of Appeals for the Federal Circuit.

Once again, however, Weber's argument was rejected. In explaining its affirmance of the board's decision, the court of appeals stated (9 F.3d at 100):

> The primary purpose of an award is to recognize the merits of the recipient in the eyes of the awarding body. In the context of this statute [5 U.S.C. § 2302(a)(2)(A)], awards are one way in which agencies affect employee relations, that is, relate to their personnel. Awards are, consequently, personnel actions. The statute prohibits awards from being used to affect improperly the relations between agencies and their employees. The primary purpose of accepting a proposal for improvement of an agency, in contrast, is improvement of the agency's service. Proposals for improvement are ultimately intended to affect the agency's relations, not with its employees, but with those it serves.

Based on this distinction, the court then went on to say:

> It is true that the acceptance of an employee suggestion may result in recognition for the employee, but that does not mean that the agency accepted the proposal in order to recognize the employee. It is also true that the agency may provide financial incentives for the submission of proposals, but that does not mean that the agency's purpose was the remuneration of an employee for services rendered, or that an employee who fails to receive an award is the victim of a "personnel action." Because the Army took no "personnel action" with regard to Weber, the Board does not have jurisdiction over Weber's claim.

The appellate court's holding that the MSPB did not have jurisdiction over Weber's claim follows, of course, from its conclusion that decisions in regard to employee suggestions are not decisions in respect to awards within the meaning of 5 U.S.C. § 2302(a)(2)(A). In other words, such decisions are deemed not to involve personnel actions. Accordingly, the decisions lie outside of the board's jurisdiction.

Defendant, however, urges a different reading of the *Weber* decision. In defendant's view, the case stands for the proposition that "the definition of personnel action [does] not include the action of an agency *in refusing* to accept an employee suggestion." (Emphasis added). Rather, defendant adds, it is only "[w]here the agency adopts an employee's suggestion and pays an award which amounts to an arbitrary treatment of the employee, that [the] action is a 'personnel action' within the meaning of the CSRA."

We disagree with this interpretation. Clearly, the court of appeals was not drawing a distinction between accepted and unaccepted employee suggestions. Indeed, such a distinction makes no sense for it finds support neither in the language of the statute—"a decision concerning pay, benefits, or awards"—nor in the goals of the CSRA "to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *United States v. Fausto*, 484 U.S. at 445, 108 S.Ct. 668. Rather, as the quoted text of the Federal Circuit's decision makes clear, the distinction being drawn is between awards that commend an employee for the superiority of his job performance—and, hence, are directed to his merits as an employee—and awards that compensate for suggestions the employee has no obligation to put forward in the first instance. Since the former are actions that originate with management and affect the employee in his status as a worker, they necessarily hold out a potential for supervisory abuse and therefore are included in the list of personnel actions as to which a prohibited personnel practice might occur. The latter, by contrast, offer management no exploitive potential because they are unrelated to the employee's status—they may affect the employee's pocketbook but not the employee's career—and consequently are not legitimately the focus of the CSRA. Simply put, decisions relating to awards involving employee suggestions are not "personnel actions." Accordingly, the CSRA has no application to plaintiff's right to proceed in this court.

*The Contract Issues*

■ The jurisdictional basis for plaintiff's suit rests upon the contention that the several suggestions that he submitted to the agency, and which the agency in turn accepted, gave rise to a series of implied-in-fact con-

tracts, *i.e.*, transactions whose enforcement by money judgment are clearly within our authority under the Tucker Act, 28 U.S.C. § 1491 (1994). Defendant resists this characterization of plaintiff's dealings with the agency. According to defendant, none of the elements required for the formation of a contract are present here. Specifically, defendant contends there was neither an offer, nor an acceptance, nor bargained-for consideration. Also lacking, defendant contends, was contractual authority on the part of the agency officials who approved the use of and payment for plaintiff's several suggestions.

We do not agree with these contentions. Admittedly, the transactions between plaintiff and the agency are not bilateral contracts in the usual sense of that term. Nor are we dealing with an exchange of promises. Rather, we are concerned with an agency-sponsored program, authorized by statute, which invites the submission of suggestions, provides for their evaluation by the agency and permits the granting of awards for those suggestions actually adopted. At its core then, the program is an invitation to submit offers which, if accepted by the agency, entitle the offeror to recognition that may include a cash award determined in accordance with published guidelines. An exchange of this character, occurring under the sponsorship of a formal program that holds out a commitment to award, gives rise to enforceable expectations correctly described as an implied-in-fact contract. For a case reaching the same result see *Griffin v. United States*, 215 Ct.Cl. 710, 713–714, 1978 WL 5754 (1978). *See also Krug v. United States*, 168 F.3d 1307, 1309 (Fed.Cir.1999) (describing the IRS's tax informant program as one in which "the Government *invites* offers for a reward; the informant *makes* an offer by his conduct; and the Government *accepts* the offer by agreeing to pay a specific sum").

Defendant insists, however, that no contract can arise here because none of the officials who approved plaintiff's suggestions were vested with contract authority. The short answer to this contention is that plaintiff's suggestions were adopted by the agency and payments were made in consequence of them. Since there is no contention here that these suggestions were not processed in accordance with the agency's established procedures, the assumption has to be that all actions that were taken complied with the authority to approve cash awards as specifically outlined in the relevant agency procedural manual.[2] No more than this is required to give rise to an enforceable obligation.[3]

■ Defendant further maintains, however, that even if our situation does involve enforceable expectations, the promise of an award does not necessarily mean the promise of a cash award. Defendant refers us to instructions relating to employee incentive awards that were issued by the Department of Health and Human Services, Personnel Manual, Instruction 451–1 (January 25, 1989). In these instructions—which defendant advises formed part of the regulatory structure under which the Social Security Administration operated until March 31, 1995—a suggestion award is identified as consisting of "a certificate [of recognition] and/or cash." These instructions also state that "[i]f [the suggestion is] adopted, the employee may be eligible for a cash award depending on the benefits realized by the Government." Thus, from defendant's point

---

**2.** As earlier noted, the provisions setting forth the Employee Suggestion Program are contained in Chapter S451–3 of the Social Security Administration's Personnel Manual for Supervisors. The version of these provisions in effect until August 1994 contained a section titled "Delegations of Authority to Grant Suggestion Awards" which set out a table identifying the officials that had been granted authority to approve cash awards. The later version of these provisions, although containing a similarly worded section, simply stated that "[a]ll suggestion awards must be approved in accordance with the authority delegated by the Commissioner."

**3.** Defendant appears to see no contradiction between the asserted lack of contractual authority on the part of the officials with whom plaintiff dealt and their participation in a process that lead to the adoption of plaintiff's suggestions and payment for the resulting use. Unless, however, one is to say that these individuals were acting totally outside of their authority, the necessary result of their conduct is properly characterizable as a contract.

of view, cash awards are optional—a matter of managerial discretion—and therefore this court lacks a basis upon which to order monetary relief in plaintiff's favor. Simply put, there is, in defendant's estimation, no money mandating scheme in place here.

That argument is not correct. The same instructions that defendant quotes go on to provide that, in addition to a suggestion award certificate, "[a] cash award for the suggestion *will also be granted* if the suggester is eligible [*i.e.*, is a government employee] and if the benefits to the Government have a value of at least $1,000." (Emphasis added). We read this as an explicit directive: a cash award is mandated if related savings cross the $1,000 threshold.

This is not to say, however, that management is without any discretion in determining the *amount* of an award. The program instructions provide in general that the cash award is to be a percentage amount (falling within a specified percentage range) of the estimated first-year savings resulting from implementation of the employee's suggestion.[4] Management therefore retains much authority in the matter since both the estimation of the first-year savings and the determination of the percentage amount of those savings to be awarded require the exercise of informed judgment. But this discretion notwithstanding, there is plainly enough of a money mandate here to satisfy the requirements for Tucker Act jurisdiction. *See Doe v. United States*, 100 F.3d 1576, 1582 (Fed.Cir.1996) ("The fact that the Secretary retains some discretion to determine the amount of an award, within prescribed limits, does not preclude the statute from being money mandating").

Within this framework then, our role is not to enforce payment of any particular sum but simply to insure that the administrative judgment called for in the determination of a cash award takes fair account of all relevant information. The decision may not be arbitrary.

Defendant's final contract-related argument draws upon standard text included in the Employee Suggestion Form (the form accompanying the employee's suggestion) which reads as follows: "I hereby agree that acceptance of a cash award constitutes an agreement that the use of this suggestion by the United States shall not form the basis of a further claim of any nature upon the United States by me, my heirs, and assignees." SSA Personnel Manual for Supervisors, *supra*, ch. S451, subchapter 3, exhibit 1, p. 2. Each of plaintiff's suggestions was forwarded to the agency under cover of a form bearing his signed acknowledgment of the quoted text. On the basis of this acknowledgment, defendant now argues that plaintiff is foreclosed from pursuing claims for additional compensation in this court.

■ We are not persuaded by this argument. It would be unwise—as well as unfair—to read the quoted text to mean that an employee who receives payment for an accepted suggestion is thereafter precluded from seeking additional compensation no matter how erroneously determined the initial payment may have been when examined in light of the relevant data. Courts do not look with favor on contract provisions that are aimed at relieving a party of the consequences of its own fault. Such clauses are strictly construed. *Port Chester Elec. Constr. Corp. v. HBE Corp.*, 894 F.2d 47, 48 (2d Cir.1990). Still less then, should contract language be read to yield an exculpatory result where that result cannot be seen plainly to have been intended.

■ We note, in this connection, that under the provisions of the Employee Suggestion Program, payment to the employee does not preclude the employee from challenging the award amount and asking that it be increased: "the suggester may ... request reconsideration of the award amount received." SSA Personnel Manual for Supervisors, ch. S451, subchapter 3, Section IV (June 28, 1985). Given the existence of this provision, it is fair to say that, from the administering agency's point of view, the

---

**4.** In instances where savings are expected to extend beyond one year but the calculated amount of first-year savings is burdened by substantial implementation costs, the award may instead be calculated on the basis of the average annual net savings realizable over a period of not more than three years.

term "further claim" that appears in the quoted text does not preclude the assertion of a timely demand for additional compensation when that demand rests upon what the employee sees as the correct basis for the measurement of an award. By necessary implication then, a "further claim" arises only where the demand for compensation based on government use of a suggestion goes *beyond* the compensation scheme set out in the suggestion program.

Consistent with the agency's own interpretation then, we take the view that the quoted language of the suggestion form does not preclude plaintiff from pursuing a demand for further relief in this court since the relief he is seeking here repeats the same demands that were the subject of his requests for reconsideration before the agency.[5]

*Statute of Limitations*

The final argument we consider is defendant's contention that plaintiff is barred by this court's six-year statute of limitations from pursuing any claims for relief in regard to Counts I and III of the complaint. As was the case with the other arguments defendant has raised, this argument too we find to be without merit.

Count I of the complaint refers to Suggestion No. 967200 which was initially accepted and approved for award in April 1990. Following this initial acceptance, plaintiff several times sought reconsideration of the award amount and, on two such occasions, was successful. The initial award of $500 was increased by an additional $1,190 in April 1992, and by a further increase of $3,012 in April 1996. A third request for additional compensation, filed in June 1996, was denied by the agency on October 23, 1996.

With respect to Count III, which refers to Suggestion No. 167052, a similar pattern of conduct took place. The suggestion was initially accepted and approved for a $500 award in August 1991. Reconsideration was sought in September 1991 and, in February 1992, the agency approved an increase in the award amount by an additional $3,450. Payment of this increased amount was made in September 1992.

Plaintiff's complaint was filed in this court on December 1, 1997. Based on this filing date, defendant maintains that the claims for additional compensation in Counts I and III are untimely because each involves a suggestion that was accepted and approved for payment by the Government more than six years prior to the commencement of suit in this court. The problem with this contention is that it focuses upon the wrong claims and consequently the wrong accrual dates.

■ Under this court's jurisprudence, a claim is said to accrue "when all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money." *Nager Elec. Co. v. United States*, 177 Ct.Cl. 234, 240, 368 F.2d 847, 851 (1966). Under this formulation, plaintiff's claims would be barred if, in fact, all events relevant to determining the Government's alleged liability had occurred by the time of the initial awards. That, however, is not the case. As the facts reveal, the agency was several times prompted to review its initial decisions and amend those decisions by granting plaintiff an increase in the award amount. Consequently, the claims plaintiff is presenting in this action do not challenge the agency's initial decisions but, rather, its final decisions. And, as to those decisions—one in April 1996 (involving Count I) and the other in September 1992 (involving Count III)—plaintiff's suit is clearly timely.

---

5. At oral argument, defendant's counsel asserted that the quoted text precluded the formation of a contract. While this contention was not further explained, presumably the point being made was that the submission of a suggestion, together with a waiver of the right to pursue additional compensation for its use (beyond the amount the agency may determine to award), necessarily meant that the employee gained no enforceable rights. The answer to this argument is that, while the Government is free to condition the terms of its acceptance of an employee suggestion on any grounds it sees fit, it may not in turn ignore the ground rules that it has adopted. These ground rules, at least, a plaintiff may seek the enforcement of. "An executive agency must be rigorously held to the standards by which it professes its action to be judged." *Vitarelli v. Seaton*, 359 U.S. 535, 546, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959) (Frankfurter, J., concurring in part and dissenting in part).

**210**

Defendant maintains, however, that plaintiff's pursuit of permissible administrative remedies (a reference to his several requests for reconsideration) cannot serve to extend the time for filing suit in this court; hence—the argument continues—the timeliness of plaintiff's claims must be judged from the time the agency first acted on his suggestions.

■ The principle defendant invokes is correct so far as it goes. The litigant who undertakes to pursue a permissible administrative remedy in lieu of filing directly in court does run the risk, because of the passage of time, of losing the right to later seek judicial relief. *Brighton Village Assocs. v. United States*, 52 F.3d 1056, 1060 (Fed.Cir. 1995). However, where the pursuit of such a remedy leads the agency to reconsider its position and to issue a new decision, then it is the new decision that fixes the date from which the statute of limitations begins to run. *See Dayley v. United States*, 169 Ct.Cl. 305, 309, 1965 WL 8250 (1965) (holding that a timely request for reconsideration of a military correction board decision "suspended the finality of the Board's 1956 order, and limitations did not begin to run until the Board's final decision in 1958").

We conclude that plaintiff's complaint, filed in December 1997, was brought well within the six-year limitations period following the agency's final award decisions of April 1996 and September 1992.

CONCLUSION

For the various reasons set forth in this opinion, defendant's motion to dismiss for lack of jurisdiction and defendant's alternative motion for summary judgment are denied.