**Olive M. CHAMBERY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 01–203C.

United States Court of Federal Claims.

July 9, 2002.

Kevin S. Cooman and Peter J. Weishaar, of Counsel, McConville, Considine, Cooman & Morin, P.C., Rochester, New York, for the plaintiff.

Lawrence N. Minch, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., with whom on the brief were, Mark A. Melnick, Assistant Director; David M. Cohen,

**4**

Director; and Robert D. McCallum, Jr., Assistant Attorney General, for the defendant.

## OPINION

MARGOLIS, Senior Judge.

This case is before the Court on defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment pursuant to United States Court of Federal Claims Rule (RCFC) 56. Plaintiff, Olive M. Chambery, contends the United States, acting though the U.S. Department of Housing and Urban Development (HUD), breached its Regulatory Agreement with plaintiff by refusing to reimburse plaintiff for property maintenance expenses out of an established reserve fund and failed to give plaintiff the monies and interest deposited into that fund by plaintiff. The Government asserts that because plaintiff's license to operate the property as a nursing home was revoked, plaintiff was in breach of the Regulatory Agreement and the mortgage on the property was accelerated; therefore, under the Agreement, the balance in the reserve account is to be applied to the outstanding mortgage debt. After a hearing in Court and for the reasons discussed herein, this Court denies both defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment.

## FACTS

On June 29, 1973, the U.S. Department of Housing and Urban Development entered into a "Regulatory Agreement for Multi-Family Housing Projects" (Regulatory Agreement) with plaintiff in consideration for HUD's endorsement of insurance on a $1,537,700 mortgage note secured by a multi-family housing project known as Beechwood Restorative Care Center (Beechwood) in Rochester, New York. Plaintiff and her late husband were partners in the partnership that owned Beechwood. The Regulatory Agreement, paragraph 9(h)(1), required plaintiff to maintain in full force and effect the requisite state license allowing Beechwood to operate as a nursing home.

Pursuant to the Regulatory Agreement, paragraph 2(a), Beechwood would request permission from HUD to be reimbursed from the reserve account for expenses related to replacement of structural elements, mechanical equipment, and other purposes. HUD reviewed plaintiff's request and reimbursed plaintiff for applicable expenses, while providing reasons when other expenses were not reimbursed. Everyday expenses were paid out of Beechwood's operating budget, not the reserve account.

From June 1975 to May 1989, Beechwood deposited $1,268.50 each month into the reserve account. On February 14, 1989, Beechwood requested reimbursement of $35,422.47 for property expenditures. HUD reimbursed $29,863.20 of the $35,422.47 from the reserve account, with the remainder being normal maintenance expenses paid out of the operating budget. On March 23, 1989, HUD requested that Beechwood double the reserve account deposit to $2,536.50 effective June 1, 1989. HUD stated that Beechwood's requests for reimbursement were substantially increasing and that in order to maintain a balance in the reserve fund, HUD was doubling Beechwood's monthly deposit from $1,268.25 to $2,536.50. HUD enclosed an Amendment Form to the Regulatory Agreement for Beechwood's signature approving the increase. Beechwood declined to sign the Amendment or approve an increase in its monthly reserve fund deposits; however, in September 1989, plaintiff voluntarily began depositing $2,536.50 into the reserve account.

On August 25, 1993, Beechwood submitted a request for reimbursement of $24,218.19 in expenses from 1991, $25,117.64 from 1992, and an additional $5,000 for architectural fees related to roof replacement, totaling $54,335.83. Beechwood also sent a letter to HUD arguing that the Regulatory Agreement did not give HUD sole authority to modify the reserve deposit amount. Over the next several months, the parties corresponded regarding their disagreement over who had the authority to modify the reserve deposit balance. In January 1994, Beechwood notified HUD that it would resume paying $1,268.50 into the reserve account rather than the $2,536.50 amount.

On March 21, 1994, Beechwood requested reimbursement of $7,010.69. HUD did not

process this request because Beechwood had not submitted an annual financial statement and had not signed the Regulatory Agreement Amendment. On February 6, 1995, Beechwood requested reimbursement for $24,104.17. HUD did not process this request because the reserve account did not have the recommended minimum balance, Beechwood had not submitted a 15–year capital projection budget, and Beechwood had not signed the Regulatory Agreement Amendment.

On June 12, 1996, HUD's reserve account managing agent agreed to reconsider a list of major repairs and replacements that were completed within the previous five years but had not been reimbursed. HUD also agreed to release $36,000 for roof replacements conditioned on Beechwood submitting financial documents, invoices, and evidence that Beechwood would continue making $1,268.25 monthly deposits into the reserve account.

In June 1999, the State of New York Department of Health commenced proceedings to revoke Beachwood's residential health care facility operating license due to state regulation violations. In July 1999, the State of New York began moving Medicare and Medicaid residents out of the Beechwood Center. On December 23, 1999, Beechwood's operating license was revoked.

In February 2000, HUD received a physical inspection report from Fleet Bank, the lender holding the mortgage and mortgage note, stating that all residents of Beechwood had been relocated to other facilities and that the Beechwood property was vacant.

On March 21, 2000, HUD gave plaintiff written notice of multiple Regulatory Agreement violations, specifically paragraph 6(a) (encumbrance of mortgaged property), paragraph 6(h) (failure to use facility for intended use), paragraph 9(e) (failure to file audited financial reports), and paragraph 9(h)(1) (failure to maintain an operating license). HUD informed plaintiff that she had 30 days to correct these violations and if the violations were not corrected that the Agreement would be declared in default without further notice. These violations were not corrected, and in August 2000 plaintiff ceased making monthly payments due under the Agreement.

On September 18, 2000, Beechwood requested reimbursement for replacement of air-conditioning units and electrical wiring totaling $107,121.60 and payment from the reserve account of an estimated $65,000 in accumulated interest. HUD's property manager noted on plaintiff's request that the reimbursement request could not be processed because of plaintiff's default.

On October 5, 2000, Fleet Bank declared the Beechwood mortgage in default and gave plaintiff notice of the acceleration of the outstanding debt, which included $1,049,428.47 in principal, $13,064.19 in accrued interest, and $191.11 in late charges. As of November 28, 2000, the balance in the reserve account was $170,747.58. On December 14, 2000, Fleet Bank assigned the mortgage note and mortgage to HUD.

Beechwood remained empty and unable to generate income while incurring maintenance and operating costs. On March 14, 2002, HUD initiated a foreclosure sale and sold Beechwood for $450,000.

## DISCUSSION

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it might significantly affect the outcome of the suit under the governing law. *Id.* at 248, 106 S.Ct. 2505.

The primary issues in this case are whether plaintiff should be reimbursed out of the reserve account for Beechwood property expenses and whether the remaining principal and interest should be returned to plaintiff, or whether, as the Government contends, the full reserve account balance can be applied against the outstanding mortgage debt.

The Government contends that summary judgment should be granted in its favor because the Regulatory Agreement permits reimbursement to plaintiff from the reserve account at HUD's discretion, and that upon default, the Agreement gives HUD the right to apply the reserve account balance to the

outstanding accelerated mortgage debt. Plaintiff claims that HUD acted in bad faith under the Agreement when HUD refused to reimburse her for expenses incurred on the Beechwood property and for failing to return money paid into the reserve account. Plaintiff claims that HUD's actions were in retaliation for plaintiff not signing the Regulatory Agreement Amendment, and therefore, the Government breached the Agreement before Fleet Bank declared plaintiff in default. In response, the Government alternatively contends that this Court's six-year statute of limitations prevents plaintiff from collecting on past property expenses that were not reimbursed, and second, that even if the Government improperly refused disbursement from the reserve account, it would still have the right to set off that unpaid amount from the mortgage debt, which dwarfs the amount of the reserve account.

Regulatory Agreement, paragraph 2(a) provides:

> Owners shall establish or continue to maintain a reserve fund for replacements by the allocation to such reserve fund in a separate account with the mortgagee or in a safe and responsible depository designated by the mortgagee, concurrently with the beginning of payments towards amortization of the principal of the mortgage insured or held by the [HUD] Secretary of an amount equal to *$1,268.25* per month unless a different date or amount is approved in writing by the Secretary.

> Such funds, whether in the form of a cash deposit or invested in obligations of, or fully guaranteed as to principal by, the United States of America shall at all times be under the control of the mortgagee. Disbursements from such fund, whether for the purpose of effecting replacement of structural elements, and mechanical equipment of the project or for any other purpose, may be made only after receiving the consent in writing of the Secretary. In the event of a default in the terms of the mortgage, pursuant to which the loan has been accelerated, the Secretary may apply or authorize the application of the balance

in such fund to the amount due on the mortgage debt as accelerated.

Compl. Ex. D.

## A. Statute of Limitations

■ The Government initially argues that plaintiff's reimbursement requests dated August 25, 1993, March 21, 1994, and February 6, 1995, fall outside of this Court's six-year statute of limitations, and therefore, this Court does not have jurisdiction to review these claims because this action was filed on April 5, 2001. Plaintiff contends that on June 12, 1996, HUD agreed to reconsider these requests, and therefore, the statute of limitations is tolled. A claim accrues when all events have occurred to fix the Government's alleged liability, thereby entitling a plaintiff to demand payment and sue in this Court for her money within six years of the accrual date. *Ridenour v. United States*, 44 Fed.Cl. 202, 209 (1999) (contracting officer's decision to reconsider suspends finality of decision). The statute of limitations does not toll when a plaintiff seeks to exhaust her administrative remedies by seeking administrative review of an agency's decision. *See Brighton Village Associates v. United States*, 52 F.3d 1056, 1060 (Fed.Cir.1995) (citing *Hurick v. Lehman*, 782 F.2d 984, 987 (Fed. Cir.1986)) (statute of limitations does not toll for relief pending before Board for Correction of Naval Records). However, where the pursuit of a remedy leads the Government to reconsider its position, outside the context of a formal administrative review proceeding, and to issue a new decision, then it is the new decision that fixes the date from which the statute of limitations begins to run. *Ridenour*, 44 Fed.Cl. at 209; *Dayley v. United States*, 169 Ct.Cl. 305, 309, 1965 WL 8250 (1965).

The question here is not whether the statute of limitations was tolled by an administrative challenge, but whether HUD's reconsideration suspended the finality of its decision. *See Summit Contractors v. United States*, 15 Cl.Ct. 806, 808–809 (1988) (reconsideration by a contracting officer suspends finality of agency decision). On June 12, 1996, plaintiff and the Government met regarding the adequacy of the reserve account. The Government agreed to review a

list of repairs and replacements that had been completed within the previous five years that had not been reimbursed, conditioned on plaintiff submitting a list of those repairs and a five-year projection of anticipated replacements. Thus, the parties' reconsideration agreement was between the plaintiff and the reserve account administrators; the agreement was not in the context of an administrative agency review whose final decision would not toll the statute of limitations upon appeal or a motion for reconsideration.

 Reconsideration by a contracting agent of an agency decision tolls the statute of limitations until that decision becomes final. *See id.* Because HUD agreed to reconsider the reimbursement claims plaintiff now asserts, the date from which this Court's statute of limitations begins to run is the date that HUD issues a final decision on these reimbursement requests. This date has not been determined as HUD apparently has not rendered its final decision on the reconsideration of these reimbursement requests. *See id.* at 809. Thus, plaintiff's claims regarding these requests are timely.

## B. Reserve Fund Default Allocation under the Regulatory Agreement

Default, under the Regulatory Agreement, paragraph 13(h), means "a default declared by the Secretary when a violation of this Agreement is not corrected to his satisfaction within the time allowed by this Agreement or such further time as may be allowed by the Secretary after written notice." Compl. Ex. D. On March 21, 2000, HUD notified plaintiff in writing that she was violating several provisions of the Regulatory Agreement and gave her 30 days to correct these violations. Plaintiff did not correct these violations, and the outstanding mortgage balance was accelerated by Fleet Bank on October 5, 2000.

The Regulatory Agreement, paragraph 2(a), provides that "[i]n the event of a default in the terms of the mortgage, pursuant to which the loan has been accelerated, the Secretary may apply or authorize the application of the balance in such fund to the amount due on the mortgage debt as accelerated." The "balance" in an account is gener-

ally understood to mean both the principal and interest earned on the principal. Thus, the plain words of paragraph 2(a) establish that both the principal and accrued interest in the reserve account may be applied to the outstanding mortgage debt. This Court therefore finds that paragraph 2(a) unambiguously gives HUD discretion to apply the total amount, both principal and interest, in the reserve account to the outstanding mortgage debt. Thus, the question of whether HUD must set off past reimbursement requests against the mortgage debt is determined by the Regulatory Agreement which gives HUD the discretion to apply the reserve fund balance at it sees fit upon plaintiff's default.

## C. Implied Covenant of Good Faith and Fair Dealing

Plaintiff contends that HUD acted arbitrarily and capriciously, unreasonably, and in bad faith when it failed to fully reimburse her for expenses incurred on the Beechwood property. Specifically, plaintiff contends that HUD retaliated against her for refusing to sign the Regulatory Agreement Amendment by not reimbursing her for expenses out of the reserve account. Plaintiff contends she should be reimbursed for the:

| | |
|---|---|
| Amount requested on August 25, 1993 | $ 54,335.83 |
| Amount requested on March 21, 1994 | $ 7,010.69 |
| Amount requested on February 6, 1995 | $ 24,604.17 |
| Amount requested on September 18, 2000 | $107,121.60 |
| Alleged total: | $193,072.29 |

These requests were made before Fleet Bank declared Beechwood in default on October 5, 2000.

 Every contract contains an implied covenant of good faith and fair dealing that neither party shall do anything that will have the effect of injuring the right of the other party to receive the fruits of the contract. *Solar Turbines, Inc. v. United States,* 23 Cl.Ct. 142, 156 (1991). Analyzing an allegation of governmental bad faith begins with the presumption that government officials act conscientiously and in good faith in the discharge of their duties. *Libertatia Associates, Inc. v. United States,* 46 Fed.Cl. 702, 706–707 (2000). For this presumption to be overcome, a plaintiff must allege and irre-

**8**

fragably prove, by clear and strong evidence, specific acts of bad faith on the part of the government that establish some specific intent to injure the plaintiff. *Id.* at 707. Thus, allegations of bad faith are comparable to actions that are motivated by malice alone. *Holt v. United States,* 1980 WL 20813, *8 (Ct.Cl.1980) (citing *Gadsden v. United States,* 111 Ct.Cl. 487, 489–90, 78 F.Supp. 126 (1948)).

 The evidence shows that the plaintiff and HUD had an ongoing dispute over who could modify the monthly reserve deposit amount and that HUD stopped servicing plaintiff's reimbursement requests because she would not sign the Regulatory Agreement Amendment increasing the monthly reserve account deposit amount. Disagreement or even an incorrect reading of a contract is not tantamount to malice or bad faith sufficient to overcome the presumption that government officials act conscientiously in discharging their duties. *Kalvar Corp., Inc. v. United States,* 211 Ct.Cl. 192, 543 F.2d 1298, 1302 (1976). HUD argues that it can modify the minimum reserve deposit amount because paragraph 2(a) of the Agreement placed the fund "at all times under [its] control." HUD also contends that a HUD Directive supports its discretion in setting the reserve deposit amount. *See* HUD Directive 4350.1. Plaintiff counters that the HUD Directive speaks of only recommended, not mandatory, minimum balances that property owners should attempt to maintain, thereby allowing property owners to make the decision as to the deposit amount.[1]

The Agreement explicitly establishes HUD's control of the funds in the reserve account and its authority to approve a change in the monthly deposit, but the Agreement does not establish who ultimately can modify the deposit amount that is subject to HUD's approval. Regulatory Agreement, paragraph 2(a), provides that modification of the reserve amount must be "approved in writing by the Secretary"— however, "approved" cannot be equated with "determined." Thus, the question of whether HUD acted with bad faith when it stopped servicing plaintiff's reimbursement requests in order to allegedly induce plaintiff to sign the Regulatory Agreement Amendment, thereby breaching its implied covenant of fair dealing and good faith, is a question of material fact that cannot be decided by summary judgment.

## CONCLUSION

For the reasons stated herein, this Court denies both the defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment.

---

1. HUD's Reserve Fund Directive provides:

 *Recommended Minimum Threshold. HUD Handbook 4465.1 REV–2, Valuation Analysis for Project Mortgage Insurance,* gives details on how the initial monthly deposit to the Reserve Fund is established. All owners should strive to reach some minimum threshold for the Reserve Fund for Replacements. The main purpose of having a recommended minimum threshold is to have funds available for an emergency or unforeseen contingency, such as a major roof failure or a water or sewer main break, so that funds could be drawn below the customary threshold. Assuming that a project is in very good physical condition and that no major replacements are needed in the near future (e.g., five years), HUD strongly recommends, but does not mandate, that owners target a minimum amount to be held in the Reserve Fund that would equal or exceed the greater of the following two amounts:
 A. The initially established monthly deposit times 144 (12 years); or
 B. At least $1,000 per unit.