NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

04-3320

WAYNE C. HAWKES,

Petitioner,

v.

DEPARTMENT OF AGRICULTURE,

Respondent.

_____

DECIDED:  November 9, 2004

_____

Before NEWMAN, <u>Circuit Judge</u>, FRIEDMAN, <u>Senior Circuit Judge</u>, and BRYSON, <u>Circuit Judge</u>.

PER CURIAM.

## DECISION

The Merit Systems Protection Board denied Wayne C. Hawkes' request for corrective action under the Whistleblower Protection Act ("WPA"), No. SF-1221-02-0558-W-1.  Because the Board did not address one aspect of Dr. Hawkes' claim, we <u>vacate and remand</u>.

## BACKGROUND

Dr. Hawkes is employed as a research chemist for the Department of Agriculture ("the agency") at the Western Human Nutrition Research Center in Davis, California.  In

September 1995, he became concerned with the Center's safety practices in handling blood-borne pathogens. He reported alleged safety violations at the Center to the California Office of Safety and Health Administration ("Cal-OSHA"). That report led to an investigation of the Center by the federal Occupational Safety and Health Administration ("OSHA") at the end of 1995. Dr. Hawkes contends that his disclosure of that violation constituted a protected disclosure within the meaning of the WPA and that the agency unlawfully retaliated against him for that disclosure in several ways. First, he was removed from the Center's Operations Oversight and Safety Teams. Second, he lost his supervisory responsibility when a support technician under his direction was reassigned. Finally, he was removed as Acting Manager of the Bioanalytical Support Laboratory at the Center.

Dr. Hawkes' second act of alleged whistleblowing occurred in 1998 and 1999, when he became concerned about the Center's computer security. Dr. Hawkes repeatedly requested that firewalls be installed in the Center's computer system, and he complained to the Center's director that the Center was violating federal law and agency regulations regarding computer security. Dr. Hawkes contends that the agency retaliated against him for that disclosure in two ways. First, he contends that he was denied a "mini-grant," which is a competitive grant awarded by the Center to fund research. Second, he maintains that the agency retaliated against him by suspending him for 14 days based on charges relating to an e-mail he sent to friends and co-workers containing jokes with sexually oriented themes.

Dr. Hawkes filed an individual right of action appeal with the Board, but the administrative judge who was assigned to the case denied his request for corrective

action. The administrative judge ruled that Dr. Hawkes' disclosure of the safety violations to Cal-OSHA and his disclosures of violations of federal law and agency regulations regarding computer security were protected disclosures under the WPA. However, the administrative judge found that the only personnel action that was covered under the WPA was the 14-day suspension. As to the suspension, the administrative judge found by clear and convincing evidence that the agency would have suspended Dr. Hawkes for 14 days for sending the e-mail regardless of his acts of whistleblowing.

Dr. Hawkes appealed the administrative judge's decision to the full Board, which affirmed the decision on the 14-day suspension but also considered whether the agency's other actions might have constituted covered personnel actions. The Board found that the denial of the mini-grant was not a personnel action covered by section 2302(a)(2)(A) of the WPA, 5 U.S.C. § 2302(a)(2)(A). The Board also assumed, without deciding, that the removal of Dr. Hawkes as Acting Director of the Bioanalytical Support Laboratory and from the Operations Oversight and Safety Teams and his loss of supervisory responsibilities were covered personnel actions. With respect to those allegations, however, the Board found that Dr. Hawkes' disclosures were not contributing factors in the agency's actions and therefore did not constitute violations of the WPA.

DISCUSSION

Dr. Hawkes argues that the Board was wrong in ruling that the agency proved by clear and convincing evidence that it would have suspended him for sending the e-mail even in the absence of his protected disclosures. The administrative judge found that

the official reasons for suspending Dr. Hawkes were convincing, namely that the sexual connotations in the jokes were very offensive to women and that they cast the agency in a bad light. Furthermore, the administrative judge concluded that Dr. Hawkes knew the e-mail was offensive because he prefaced the e-mail by stating that he had taken only the grossest jokes out before sending it. Finally, the government presented examples in which the agency had imposed similar disciplinary actions for similar inappropriate conduct. Under these circumstances, we cannot find that the Board's decision was unsupported by substantial evidence.

Dr. Hawkes next argues that the Board erred in finding that the agency's failure to give him a mini-grant was not a covered personnel action under section 2302(a)(2)(A) of the WPA. The agency argues that the Board's conclusion is valid, based on the fact that employees had to compete for the mini-grant. In making that argument, the agency conflates the definition of personnel action in section 2302(a)(2)(A) with the requirement in section 1221(e)(1) of the WPA, 5 U.S.C. § 1221(e)(1), that the act of whistleblowing be a contributing factor in the government's decision to take the personnel action. For example, it is conceivable that a government agency would refuse to consider an employee for a competitive award solely to retaliate for the employee's whistleblowing. Awards are clearly within the definition of personnel actions. 5 U.S.C. § 2302(a)(2)(A)(ix). However, the problem in the context of a competitive award is that it is difficult for the employee to prove that the award was withheld because of the whistleblowing rather than because another employee won the competition.

We nonetheless uphold the Board's decision on the mini-grant issue, because the denial of the mini-grant was not a personnel action. In Weber v. Department of the

04-3320 4

Army, 9 F.3d 97 (Fed. Cir. 1993), an engineer complained that the Army had violated the WPA when it selected others' engineering proposals over his own proposals. There was evidence that an incentive system rewarded the acceptance of engineering proposals and that professional prestige accrued to those who submitted successful proposals. Id. at 100. This court, however, noted that the primary purpose of the proposals was for the "improvement of the agency's service," rather than to affect the agency's relations with its employees. Id. Thus, the court found that the rejection of the engineering proposal did not constitute a personnel action. Id. In Dr. Hawkes' case, the description of the mini-grant program states that it was established to help the Center accomplish its mission "to conduct research which will define adequate and safe levels of nutrient intake for the U.S. population." Like the rejection in Weber, the rejection of Dr. Hawkes' proposal for a mini-grant cannot be considered a personnel action, because the program was meant to improve the agency's service rather than to affect the agency's relations with its employees.

Dr. Hawkes also argues that the Board was wrong to find that his protected disclosure to Cal-OSHA was not a contributing factor in the agency's decision to remove him from his positions as Acting Director of the Bioanalytical Support Laboratory and a member of the Operations Oversight and Safety Teams, and in its decision to end his other supervisory responsibilities. The Board based that finding solely on the testimony of Dr. King, the official who removed Dr. Hawkes from those positions. The Board noted that "Dr. King testified without rebuttal that she was unaware that the appellant had made any disclosures to Cal-OSHA." Because Dr. King was unaware of the

disclosure, the Board reasoned, her removal of Dr. Hawkes from those positions could not have been based on the disclosure.

The Board, however, ignored Dr. King's acknowledgment that she knew Dr. Hawkes had caused the federal OSHA inspection that resulted from his disclosure to Cal-OSHA. Dr. Hawkes argued before both the administrative judge and the Board that he made a protected disclosure that resulted in the federal OSHA investigation and that he suffered retaliation as a result of that disclosure. Neither the administrative judge nor the Board addressed that argument. The government does not suggest in its brief that Dr. Hawkes narrowed his claim to exclude the federal OSHA investigation from the Board's consideration of his WPA claim. Under these circumstances, the Board should have addressed Dr. Hawkes' contention that he made a protected disclosure that resulted in a federal OSHA investigation and that Dr. King retaliated against him for causing that investigation.

In addition, the Board did not address the testimony of Mr. Bartolini, who recommended to Dr. King that Dr. Hawkes be removed from the Operations Oversight and Safety Teams. Mr. Bartolini admitted that he wanted Dr. Hawkes removed because he was "too extreme" in his desire to see safety procedures relating to the OSHA inspection conducted properly. That evidence bears on Dr. Hawkes' contention that he suffered retaliation as a result of protected disclosures; accordingly, the Board should have addressed that evidence before dismissing his WPA claim.

We therefore vacate the Board's order and remand this case to the Board for further factual and legal development. See Holderfield v. Merit Sys. Prot. Bd., 326 F.3d 1207, 1209 (Fed. Cir. 2003) ("Since the Board did not address the 'working conditions'

04-3320                                                   6

definition of a personnel action, and we are not able to review its decision without its analysis, we must vacate."); <u>Whittington v. Merit Sys. Prot. Bd.</u>, 80 F.3d 471, 476 (Fed. Cir. 1996) (because the Board "failed to make relevant factual findings or apply the appropriate statutory and regulatory law . . . we can neither reverse nor affirm the Board's decision because either action would require us to apply law the Board did not consider to facts the Board did not consider").

On remand, the Board should address whether the OSHA complaint was, in fact, a contributing factor to Dr. Hawkes' removal from the various positions at the Center. With regard to that issue, the Board assumed that the removals and changes in responsibilities were personnel actions under section 2302(a)(2)(A).  The Board should further determine whether those actions fell within the definition of personnel actions.

As to Dr. Hawkes' arguments that the Board should not have sustained certain procedural rulings by the administrative judge and that the Board should have found other instances of whistleblowing, we find that they are without merit.